IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| ANITA RUSSELL, Personal | ) | |
| Representative for the Estate | ) | |
| of Daniel Russell, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  3:11-cv-00075-GEC |
| | ) | |
| DENNEY WRIGHT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT TASER INTERNATIONAL, INC.'S ANSWER TO COMPLAINT

Defendant TASER International, Inc. ("TASER" or "Defendant") answers Plaintiff's Complaint, filed October 19, 2011 in the Circuit Court for Albemarle County,[1] as follows.  Defendant notes that for ease of reference, the Complaint's allegations are set forth verbatim, with Defendant's Answers following each allegation.

## PARTIES

1.    Plaintiff Anita Russell is the personal representative of the estate of Daniel Russell and resides at 5944 Railroad AV, Crozet, VA 22932 in Albemarle County.

**ANSWER**:    **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 1, and on those grounds, denies generally and specifically each and every allegation contained therein.**

2.    Defendant Denney Wright is a duly sworn peace officer acting duly under color of law and in doing the things herein alleged, was acting in the course and scope of his employment as a deputy for the Appomattox County Sheriff's Office.

---

[1] Upon a review of the record following removal of this case to this Court, it does not appear that Plaintiff was ever granted leave to file her proposed Amended Complaint in either state or federal court.

**ANSWER**: **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 2, and on those grounds, denies generally and specifically each and every allegation contained therein.**

3. Appomattox County is a political subdivision and agency of the Commonwealth of Virginia and is responsible for supervising and training the deputies at the Sheriff's department on the appropriate use of TASER weapons.

**ANSWER**: **TASER admits that Appomattox County is a political subdivision of the Commonwealth of Virginia. TASER denies that Appomattox County is an agency of the Commonwealth of Virginia. TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 3, and on those grounds, denies generally and specifically each and every allegation contained therein.**

4. The Commonwealth of Virginia is the employer of Defendant Denney Wright and is liable for his actions pursuant to the Virginia Tort Claims Act, Va. Code Ann. § 8.01-195.3. Pursuant to the Eleventh Amendment of the U.S. Constitution, federal courts do not have jurisdiction over claims brought against the Commonwealth under the Virginia Tort Claims Act.

**ANSWER**: **Because Plaintiff alleges that Defendant Denney Wright is employed by the Appomattox County Sheriff's Office, TASER denies that Defendant Denney Wright is employed by the Commonwealth of Virginia and TASER denies that the Commonwealth of Virginia would be liable for Defendant Denney Wright's actions pursuant to the Virginia Tort Claims Act. TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 4, and on those grounds, denies generally and specifically each and every allegation contained therein.**

5. Defendant TASER International, Inc. is a corporation engaged in the design, manufacturing, distribution and sales of electroshock weapons, including the weapon that killed Daniel Russell. Defendant TASER International, Inc. is headquartered and incorporated in the State of Arizona, Defendant TASER International, Inc. maintains a registered agent in Arlington, VA.

**ANSWER**:   TASER admits that it is a Delaware Corporation with its principal place of business in Scottsdale, Arizona, and that it maintains a registered agent in Arlington, Virginia. TASER further admits that it is engaged in the business of designing, manufacturing, distributing and selling TASER® brand electronic control devices ("ECDs") and cartridges. TASER denies generally and specifically each and every remaining allegation contained in Paragraph 5 and denies liability.

## VENUE

6.   Albemarle County is the preferred venue pursuant to Va. Code Ann. § 8.01-261(18)(a) because Plaintiff alleges a claim pursuant to the Virginia Tort Claims Act and Plaintiff resides in Albemarle County.

**ANSWER**:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 6, and on those grounds, denies generally and specifically each and every allegation contained therein.

## FACTS

7.   During the late evening, on October 30, 2010, Defendants Appomattox County Sheriff's Deputies Denney Wright, Christopher Sams and John Maddox were dispatched to 7724 Red House Road in Appomattox, VA.

**ANSWER**:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 7, and on those grounds, denies generally and specifically each and every allegation contained therein.

8.     This dispatch was in response to a 911 call from Plaintiff's son, Andrew Russell reporting a potential injury to his little brother Rhett Russell which occurred after an argument with his father Daniel Russell.

**ANSWER**:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 8, and on those grounds, denies generally and specifically each and every allegation contained therein.

9. After this dispute, Daniel Russell ensured that his son Rhett was okay then left the house, got into his vehicle, and proceeded to drive away from his house.

**ANSWER**: **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 9, and on those grounds, denies generally and specifically each and every allegation contained therein.**

10. Deputies Denney Wright, Christopher Sams and John Maddox were nearing the Russells' residence when they saw Daniel Russell's truck pull out of the driveway. The Deputies turned their cars around and proceeded to follow Daniel Russell with their lights and sirens on.

**ANSWER**: **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 10, and on those grounds, denies generally and specifically each and every allegation contained therein.**

11. Upon seeing the sirens and lights of the Deputies' cars, Daniel Russell slowed down, put on his blinker and pulled over at the next safe location in an empty parking lot. There was no shoulder on the short stretch of road between the Russell's residence and the parking lot.

**ANSWER**: **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 11, and on those grounds, denies generally and specifically each and every allegation contained therein.**

12. Daniel Russell then exited the vehicle and took approximately three steps with his arms raised to demonstrate that he was unarmed and would comply with the deputies' instructions.

**ANSWER**: **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 12, and on those grounds, denies generally and specifically each and every allegation contained therein.**

13. Daniel Russell stopped walking, several yards before reaching the deputies, and remained standing with his arms raised. Daniel Russell was showing no signs of aggression and was clearly not attempting to evade arrest. In fact, Daniel Russell's demeanor would make it clear to any reasonable person that he was going to peacefully surrender to the deputies.

**ANSWER**:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 13, and on those grounds, denies generally and specifically each and every allegation contained therein.

14.   The Deputies shouted to him to get on the ground, but gave him only a few seconds to comply with the request before Defendant Denney Wright, without any objective justification to do so, unreasonably, inappropriately, and unnecessarily shot Daniel Russell in the chest with his Electronic Control Device ("ECD"), also known as a TASER, causing (50,000) volts of electricity to flow through his body. As a direct result of this unnecessary and unprovoked attack, Daniel Russell went into cardiac arrest, became non-responsive, slipped into a coma, and subsequently died.

**ANSWER:**   TASER denies that a TASER ECD is capable of causing 50,000 volts of electricity to "flow through [Mr. Russell's] body," or that a TASER ECD is capable of causing or did in fact cause Mr. Russell to suffer cardiac arrest.  TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations in Paragraph 14, and on those grounds denies generally and specifically each and every allegation contained therein and denies liability.

15.   Daniel Russell's actions gave the deputies no reason to believe that he posed a danger to the deputies or that he would resist arrest.

**ANSWER**:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 15, and on those grounds, denies generally and specifically each and every allegation contained therein.

16.   Daniel Russell did not attempt to flee from the deputies and was in fact demonstrating that he would not resist arrest by calmly raising his hands.

**ANSWER**:   TASER lacks sufficient information or belief to enable TASER to answer Paragraph 16, and on those grounds, denies generally and specifically each and every allegation contained therein.

17.   Rather than immediately calling an ambulance and administering CPR, the deputies waited a full seven minutes before deciding to assist Daniel Russell.

**ANSWER**: **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 17, and on those grounds, denies generally and specifically each and every allegation contained therein.**

18.     Due to the cardiac arrest, Daniel Russell was without oxygen for a prolonged period of time. This lack of oxygen for a prolonged period of time caused Plaintiff to suffer severe and permanent brain injury leading to his untimely death.

**ANSWER**: **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 18, and on those grounds, denies generally and specifically each and every allegation contained therein.**

19.     Daniel Russell died from the injuries he received as a result of being shot with the TASER on June 1, 2011.

**ANSWER**: **TASER denies generally and specifically the allegations contained in Paragraph 19 of the Complaint and denies liability.**

20.     At all times mentioned herein, the individual Defendant Denney Wright acted with deliberate indifference to the safety, security and well-being of Daniel Russell, and was further reckless, willful and wanton in using deadly force against Daniel Russell in the absence of provocation or non-compliance.

**ANSWER**: **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 20, and on those grounds, denies generally and specifically each and every allegation contained therein.**

21.     Any fair-minded person would be shocked to see Daniel Russell, standing with his arms up and showing no signs of resistance, being shot with a TASER and going into cardiac arrest.

**ANSWER**: **TASER denies that an exposure from a TASER ECD caused or contributed to Mr. Russell going into cardiac arrest. TASER lacks sufficient information or belief to enable TASER to answer Paragraph 21, and on those grounds, denies generally and specifically each and every allegation contained therein.**

22.    Upon information and belief, the deputies of the Appomattox County Sheriff's Department engage in a pattern and practice of routinely deploying TASERs on citizens without provocation and justification.

**ANSWER**:    **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 22, and on those grounds, denies generally and specifically each and every allegation contained therein.**

23.    In response to the tragic and unprovoked TASER shooting of Daniel Russell, the Appomattox Sheriff's Department declared that the deputies were following the department's protocols and that the shooting was justified.

**ANSWER**:    **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 23, and on those grounds, denies generally and specifically each and every allegation contained therein.**

24.    Defendant Denney Wright also asserted that he was following protocol by shooting Daniel Russell in the chest.

**ANSWER**:    **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 24 and on those grounds, denies generally and specifically each and every allegation contained therein.**

25.    In November of 2007, the United Nations Committee Against Torture declared 'The use of TASERX26 weapons, provoking extreme pain, *constituted a form of torture,* and that in certain cases it could also cause death, as shown by several reliable studies and by certain cases that had happened after practical use."

**ANSWER**:    **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 25 and on those grounds, denies generally and specifically each and every allegation contained therein.**

26.    At least 334 deaths have been linked to the use of TASER guns between 2001 and August 2008.  Amnesty International noted that 90% of the TASER deaths examined involved people who were unarmed and did not appear to present a serious threat to the officers.

**ANSWER**: **TASER denies generally and specifically the allegations contained in Paragraph 26 of the Complaint and denies liability.**

27. Despite the fact that TASER weapons can cause death and constitutes a form of torture, Defendant TASER International, Inc. advertises its products as "safer than high school sports."

**ANSWER**: **TASER denies generally and specifically the allegations contained in Paragraph 27 of the Complaint and denies liability.**

28. Despite the fact that shooting a victim in the chest with a TASER can cause death, Defendant TASER International, Inc. advertises that there are "no negative effects" when a subject is hit in the chest.

**ANSWER**: **TASER denies generally and specifically the allegations contained in Paragraph 28 of the Complaint and denies liability.**

29. Studies have shown, however, a clear link between the TASER being activated in a victims chest and cardiac events. The New England Journal of Medicine has reported on incidences of cardiac arrest subsequent to TASER ECD exposure. Further, a 2006 independent study found that the X26 TASER applied to the chests of anaesthetized animals almost always caused cardiac capture.

**ANSWER**: **TASER denies generally and specifically the allegations contained in Paragraph 29 of the Complaint and denies liability.**

30. TASER International, Inc. further recruits Master TASER Instructors to tell police deputies that the TASER does not adversely affect the heart, even when a victim is shot in the chest. Specifically, TASER has advertised that animal studies have shown there is no linkage between their TASER activation in the heart and heart failure or interference with heart rhythms.

**ANSWER**: **TASER admits that no peer-reviewed medical, scientific, electrical, or engineering literature, learned treatise, or professional association in a published statement has ever concluded that a TASER ECD can cause "heart failure" or "interference with heart rhythms" in humans. TASER denies generally and specifically the remaining allegations contained in Paragraph 30 of the Complaint and denies liability.**

31.  Defendant TASER International, Inc. has created this false impression of safety by funding and biasing the studies which it relies on as proof of the safety of the TASER weapon. A study conducted by Cardiologists at the University of California, San Francisco has concluded that studies funded by TASER manufacturers are 75% more likely to conclude that the TASER is a safe weapon.

**ANSWER**:    **TASER denies generally and specifically the allegations contained in Paragraph 31, of the Complaint and denies liability.**

32.  Defendant TASER International, Inc. did recommend in October 21, 2009 that officers refrain from shooting victims in the chest, but then issued a letter to law enforcement officers advising them not to "overreact" or "read things into" their recommendation to avoid shooting people in the chest. Rather, Defendant TASER emphasized in this letter that it was not admitting that the TASER could cause cardiac arrest, emphasized that thousands of people have been shot in the chest without adverse effects, and emphasized that the risk of cardiac arrest from a TASER shot to the chest was effectively 0 percent.

**ANSWER**:    **TASER states that its training bulletins and "letters to law enforcement" speak for themselves.  TASER denies generally and specifically the allegations contained in Paragraph 32 of the Complaint and denies liability.**

33.  Defendant TASER International, Inc. did not intend to warn officers that shooting people in the chest was unsafe, but rather emphasized that "[t]he intent of the new preferred target zones is risk mitigation, pure and simple."  Defendant TASER further stated that, "[i]t is no secret that TASER International is involved in several lawsuits, and we often partner with law enforcement agencies in defending use of force litigation. We know the tactics being used by plaintiff's attorneys and we are trying to protect our law enforcement customers and ourselves from the lengthy and unpleasant process of civil litigation."

**ANSWER**:    **TASER states that its training bulletins and "letters to law enforcement" speak for themselves.  TASER denies generally and specifically the allegations contained in Paragraph 33, of the Complaint and denies liability.**

34.  Had Defendant TASER focused on trying to protect human life rather than on protecting themselves from the valid claims of family members whose loved ones were killed by Defendant TASER's products then Daniel Russell would be alive today.

**ANSWER**:  **TASER denies generally and specifically the allegations contained in Paragraph 34 of the Complaint and denies liability.**

35.  Because of TASER International, Inc.'s false assurances of safety and failure to warn that a shot to the chest could cause cardiac arrest, Defendant Denney Wright shot Daniel Russell directly in the chest as opposed to another part of the body which resulted in the death of Daniel Russell.

**ANSWER**:  **TASER denies generally and specifically the allegations contained in Paragraph 35 of the Complaint and denies liability.**

<u>**COUNT I**</u>

<u>**Virginia Tort Claims Act**</u>

**(Against Defendant Commonwealth of Virginia)**

36.  The allegations and averments of paragraphs 1 — 37 above are herein repeated and incorporated by reference.

**ANSWER**:  **TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

37.  Pursuant to Va. Code Ann. § 8.01-195.6, the Commonwealth of Virginia was notified of this claim by certified mail on April 5, 2011.

**ANSWER**:  **TASER lacks sufficient information or belief to enable TASER to answer Paragraph 37, and on those grounds, denies generally and specifically each and every allegation contained therein.**

38.  Plaintiff asserts, that the Commonwealth of Virginia is liable *respondeat superior,* for the negligence and gross negligence of Defendant Denney Wright in shooting Daniel Russell with a TASER thereby causing his death.

**ANSWER**:  **TASER denies that an exposure from a TASER ECD is capable of causing or did in fact cause Mr. Russell's death.  TASER states that the allegations in Paragraph 38 contain**

legal conclusions, to which no response is required. **TASER lacks sufficient information or belief to enable TASER to answer the remaining allegations contained in Paragraph 38 of the Complaint, and on those grounds, denies the remaining allegations contained therein and denies liability.**

39. Upon information and belief, the Defendant Denney Wright shot Daniel Russell with a TASER weapon without provocation or justification.

**ANSWER**: **TASER is not a party to Paragraph 39 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

40. Defendant Denney Wright owed a duty to Daniel Russell to use reasonable means to detain and/or question Mr. Russell.

**ANSWER**: **TASER states that the allegations in Paragraph 40 contain legal conclusions, to which no response is required. However, to the extent that a response is required, TASER lacks sufficient information or belief to enable TASER to answer Paragraph 40, and on those grounds, denies generally and specifically each and every allegation contained therein.**

41. Defendant Denney Wright breached the duty owed Daniel Russell by shooting him with a TASER gun despite the fact that he was compliant and posed no threat to the deputies.

**ANSWER**: **TASER states that the allegations in Paragraph 41 contain legal conclusions, to which no response is required. However, to the extent that a response is required, TASER lacks sufficient information or belief to enable TASER to answer Paragraph 41, and on those grounds, denies generally and specifically each and every allegation contained therein.**

42. Because of Defendant Denney Wright's negligent actions, Daniel Russell died, and Anita Russell and her children have been deprived of Daniel Russell's mental and financial support.

**ANSWER**: **TASER is not a party to Paragraph 42 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

43.  The foregoing wrongful acts of the Defendant deputies were a direct and proximate cause of the Plaintiff's injuries.

**ANSWER**:  **TASER is not a party to Paragraph 42 of the Complaint and does not respond to the allegations contained therein.  To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

Pursuant to the Virginia Tort Claims Act, the Plaintiff demands damages of one hundred thousand dollars ($100,000.00) as well as any other amounts this Honorable Court deems appropriate.

**ANSWER**:  **TASER denies that Plaintiff is entitled to any relief and TASER denies liability.**

<u>**COUNT II**</u>

<u>**42 U.S.C. 1.983**</u>

**(Against Defendants County of Appomattox and Deputy Denney Wright)**

44.  Plaintiffs incorporate by reference all of the foregoing allegations as if fully rewritten herein.

**ANSWER**:  **TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

45.  At all times mentioned herein, Daniel Russell was a citizen of the United States, and thus, entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted there under.

**ANSWER**:  **Upon information and belief, TASER admits only that Daniel Russell was a citizen of the United States. TASER states that the remaining allegations in Paragraph 45 contain legal conclusions, to which no response is required.  However, to the extent that a response is required, TASER lacks sufficient information or belief to enable TASER to answer Paragraph 45, and on those grounds, denies generally and specifically each and every allegation contained therein.**

46.  In the manner aforementioned, the County of Appomattox and its officials, employees, agents and representatives, including Defendant Denney Wright were acting at all times under the color of statutes, ordinances, regulations, customs and law.

**ANSWER**:   TASER is not a party to Paragraph 46 of the Complaint and does not respond to the allegations contained therein.  To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.

47.   Defendant Denney Wright acted with deliberate indifference, gross negligence, and reckless disregard for the safety, security and constitutional and statutory rights of Daniel Russell when Defendant Wright shot Daniel Russell with a TASER and killed him without any provocation or justification.

**ANSWER**:   TASER is not a party to Paragraph 47 of the Complaint and does not respond to the allegations contained therein.  To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.

48.   Defendant Denney Wright knew or should have known that this acts as described herein were prohibited under Federal law.

**ANSWER**:   TASER is not a party to Paragraph 48 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.

49.   Plaintiff is informed and believes, and on the basis of such information and belief allege, that the County of Appomattox and its officials, employees, agents and representatives, with deliberate indifference, gross negligence and reckless disregard for the safety, security and constitutional and statutory rights of the Plaintiff and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, or customs and usages of, among other things:

    a.   Subjecting people to unreasonable uses of force against their persons.

    b.   Selecting, retaining and assigning employees with demonstrable propensities for excessive force, violence and other misconduct;

    c.   Failing to adequately train, supervise and control employees in the dangers of discharging Electronic Control Devices ("ECDs"), including, without limitation, the use of potentially lethal tactics, including ECD shocks, for the taking into custody of person such as Plaintiff.

    d.   Failure to adequately discipline deputies involved in misconduct; and

e. Condoning and encouraging deputies in the belief that they can violate the rights of persons as the Plaintiff in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employee benefits.

f. Failure to adequately train deputies in the proper protocol for treating victims of TASER attacks.

**ANSWER**:    **TASER is not a party to Paragraph 49 of the Complaint and does not respond to the allegations contained therein.  To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

50.    Plaintiff is informed and believes, and on the basis of such information and belief alleges, that the County of Appomattox and its officials, employees, agents and representatives ordered, authorized, acquiesced in, tolerated, permitted or maintained custom and usages permitting the other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices and customs or usages set forth in the foregoing paragraph. Defendant's conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants or on defendants deliberate indifference, gross negligence or reckless disregard for the safety, security and rights of Daniel Russell.

**ANSWER**:    **TASER is not a party to Paragraph 50 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

51.    In the manner aforementioned, the County of Appomattox and its officials, employees, agents and representatives knowingly and purposely deprived Plaintiff of his clearly established rights, privileges and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

**ANSWER**:    **TASER is not a party to Paragraph 51 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

52. The County of Appomattox and its officials, employees, agents and representatives knew, or should have known, that their acts and omissions as described herein were prohibited under Federal law.

**ANSWER**: **TASER is not a party to Paragraph 52 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

53. The County of Appomattox's mistreatment of Daniel Russell was perpetrated pursuant to the municipality's policies and customs.

**ANSWER**: **TASER is not a party to Paragraph 53 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

54. The forgoing wrongful acts of the County of Appomattox, Defendant Denney Wright and its officials, employees, agents and representatives were a direct and proximate cause of Daniel Russell's death.

**ANSWER**: **TASER is not a party to Paragraph 54 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

WHEREFORE, Plaintiff demands money damages in the amount of $15 million dollars together with an award to the Plaintiff for reasonable attorney's fees and costs of litigation, as well as any other amounts this Honorable Court deems appropriate.

**ANSWER: TASER denies that Plaintiff is entitled to any relief and TASER denies liability.**

## COUNT III

## GROSS NEGLIGENCE

### (Against Defendants Denney Wright and Appomattox County)

55. Plaintiffs incorporate by reference all of the foregoing allegations as if fully rewritten herein.

**ANSWER**: **TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

56. Defendant Denney Wright acted with deliberate indifference, gross negligence and utter disregard for the safety, security and constitutional and statutory rights of Daniel Russell by shooting Daniel Russell with a TASER weapon without provocation or justification.

**ANSWER**: **TASER is not a party to Paragraph 56 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

57. The unprovoked and unjustified shooting of Daniel Russell with a TASER weapon is shocking to fair-minded people.

**ANSWER**: **TASER is not a party to Paragraph 57 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

58. The unprovoked and unjustified shooting of Daniel Russell with a TASER weapon constitutes torture.

**ANSWER**: **TASER is not a party to Paragraph 58 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

59. Defendant Appomattox County also acted with deliberate indifference, gross negligence and utter disregard for the safety, security and constitutional and statutory rights of Daniel Russell by condoning and encouraging the unprovoked and unjustified use of TASERs by its deputies.

**ANSWER**: **TASER is not a party to Paragraph 59 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

60. Defendant Appomattox County policy of encouraging indiscriminate TASER attacks on its citizens is shocking to fair-minded people.

**ANSWER**: **TASER is not a party to Paragraph 60 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

61.   Because of Defendants' grossly negligent actions, Daniel Russell died, and Anita Russell and her children have been deprived of Daniel Russell's mental and financial support.

**ANSWER**:   **TASER is not a party to Paragraph 61 of the Complaint and does not respond to the allegations contained therein.   To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

62.   The forgoing wrongful acts of the Defendants were a direct and proximate cause of Daniel Russell's death.

**ANSWER**:   **TASER is not a party to Paragraph 62 of the Complaint and does not respond to the allegations contained therein.   To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

WHEREFORE, Plaintiff demands money damages in the amount of $15 million dollars together with an award to the Plaintiff for reasonable attorney's fees and costs of litigation, as well as any other amounts this Honorable Court deems appropriate.

**ANSWER:**   **TASER denies that Plaintiff is entitled to any relief and TASER denies liability.**

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR
## PURPOSE- Virginia Code 8.2-315

**(Against Defendant TASER International, Inc.)**

63.   Plaintiffs incorporate by reference all of the foregoing allegations as if fully rewritten herein.

**ANSWER**:   **TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

64.   Defendant TASER International, Inc. designed, manufactured, sold, distributed, assembled, inspected, tested, serviced, marketed, warranted and advertised the subject TASER/ECD which contained design and/or manufacturing defects that were capable of causing and in fact did cause personal injuries to people while being used in the manner reasonably foreseeable, thereby rendering same unsafe and dangerous for its intended use.

**ANSWER**: **TASER denies generally and specifically the allegations contained in Paragraph 64 of the Complaint and denies liability.**

65. Defendant TASER International, Inc. was the designer, assembler, manufacturer, seller, distributor, fabricator, inspector, tester, servicer, repairer, marketer, maintainer, warrantor and/or advertiser thereof or were otherwise involved in the stream of commerce to the extent that the laws of the State of Virginia impose liability in tort for injuries caused by defects herein.

**ANSWER**: **TASER states that the allegations in Paragraph 65 contain legal conclusions, to which no response is required. However, to the extent that a response is required, TASER admits generally that it designs, assembles, manufactures, sells, distributes, fabricates, inspects, tests, services, repairs, markets, maintains, warrants and/or advertises TASER brand ECDs. TASER lacks sufficient information or belief to know whether a TASER brand ECD was used in the alleged incident, and on those grounds, denies the same. TASER denies the remaining allegations contained in Paragraph 65 of the Complaint and denies liability.**

66. Defendant TASER International, Inc. knew that the TASER/ECD weapon's design, manufacture, assembly, marketing and distributing by it was defective and dangerous; that because of the defects, the weapon could not be used safely for the purpose for which it was intended; that Defendant knowing that this weapon was defective and dangerous, in conscious disregard of the safety of the public, placed this product on the market without warning customers or the unknowing public of the defects and dangers and knew when it did so that this weapon should be sold and used without knowledge of the defects and dangers; and that Defendants and each of them, by placing the defective and dangerous weapon on the market, expressly and impliedly represented that it was safe for the purpose for which it was intended. The other Defendants herein, in purchasing and using the defective weapon as herein alleged, did rely on each of the Defendant's representations. In doing the things aforementioned Defendant, TASER International, Inc., is guilty of willful, wanton conduct in recklessness/conscious disregard for the rights of Daniel Russell, and Plaintiff is therefore entitled to recover exemplary and punitive damages in an amount to be determined at trial.

**ANSWER**: **TASER denies generally and specifically the allegations contained in Paragraph 66 of the Complaint and denies liability.**

67.    The TASER/ECD deployed by Defendants was unreasonably dangerous and not fit for the purpose it was intended, as alleged above.

**ANSWER**: **TASER denies generally and specifically the allegations contained in Paragraph 67 of the Complaint and denies liability.**

68.    The TASER/ECD manufactured by Defendant TASER International, Inc. directly and proximately caused Daniel Russell's death, damages and losses, thus entitling Plaintiff to full and complete relief against the Defendants as provided by law.

**ANSWER**: **TASER denies generally and specifically the allegations contained in Paragraph 68 of the Complaint and denies liability.**

69.    As a direct and proximate result of the above-described defects in the subject product, as aforementioned, and the conduct of Defendant TASER International, Inc., as alleged above, in combination with the wrongful conduct of the other Defendants, Daniel Russell died.

**ANSWER**: **TASER denies generally and specifically the allegations contained in Paragraph 69 of the Complaint and denies liability.**

WHEREFORE, Plaintiff demands money damages in the amount of $15 million dollars together with an award to the Plaintiff for reasonable attorney's fees and costs of litigation, as well as any other amounts this Honorable Court deems appropriate.

**ANSWER**:  **TASER denies that Plaintiff is entitled to any relief and TASER denies liability.**

### COUNT V

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY- Virginia

### 8.2-314

**(Against Defendant TASER International, Inc.)**

70.    Plaintiffs incorporate by reference against Defendant TASER International, Inc. all of the foregoing allegations as if fully rewritten herein.

**ANSWER**:    **TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

71.    At all times mentioned herein, Defendant TASER International Inc. was engaged in the business and profession of designing, manufacturing, selling, distributing, fabricating, assembling, buying, inspecting, testing, servicing, repairing, marketing, warranting and advertising its TASER/ECD which these Defendants knew, or in the course of reasonable care should have known, was defective, unreasonably dangerous and unfit for the ordinary purpose by which the device is used, and that such device would be used without inspection for defects or dangers in its parts, mechanisms or design.

**ANSWER**:    **TASER admits that it designs, manufactures, sells, distributes, fabricates, assembles, buys, inspects, tests, services, repairs, markets, warrants and advertises TASER brand ECDs.  TASER denies generally and specifically the remaining allegations in Paragraph 71 of the Complaint and denies liability**

72.    At all times mentioned herein, Defendant TASER International, Inc. knew that it's TASER/ECD was unreasonably dangerous and defective for use on human beings because, among other reasons, it posed a risk of ventricular fibrillation, cardiac arrest and or death to persons subjected to direct shocks to the chest, or persons under the influence of alcohol, such that the weapon causes unnecessary deaths.

**ANSWER**:    **TASER denies generally and specifically the allegations contained in Paragraph 72 of the Complaint and denies liability.**

73.    At all times mentioned herein, Defendant TASER International, Inc. negligently and carelessly designed, manufactured, sold, distributed, installed, fabricated, assembled, bought, inspected, altered, maintained, serviced, tested, repaired, marketed, warranted and advised their unreasonably dangerous and defective product in that it was capable of causing, and in fact did cause, personal injuries to persons while being used in a manner reasonably foreseeable, thereby rendering the product unsafe and dangerous for use in its intended manner.

**ANSWER**:   **TASER denies generally and specifically the allegations contained in Paragraph 73 of the Complaint and denies liability.**

74.   Plaintiff is informed and believes and thereon alleges that Defendant TASER International Inc. was guilty of willful, wanton conduct in reckless/conscious disregard for the rights of the Daniel Russell and other people whom they knew, or reasonably should have known, were likely to be shocked with a TASER/ECD by law enforcement deputies not adequately warned or trained about the extreme and unreasonable danger of this product, and that the weapons posed an unreasonable risk of death to people such as Mr. Russell.

**ANSWER**:   **TASER denies generally and specifically the allegations contained in Paragraph 74 of the Complaint and denies liability.**

75.   Based on these facts, Defendant TASER International Inc. knew that the TASER/ECD could not be used safely for the purpose for which it was intended, and that this weapon was defective and dangerous, but despite that knowledge and in conscious disregard of the safety of the public, including Daniel Russel, Defendant TASER International, Inc. placed its TASER/ECD product on the market without warning customers or the unknowing public of the defects and dangers. Defendant TASER International, Inc. further knew when it placed this product on the market it would be sold to and used by law enforcement agencies without adequate knowledge of its defects and dangers, and expressly and impliedly represented that it was safe for the purpose for which it was intended. In doing the aforementioned, Defendant TASER International, Inc. was guilty of willful, wanton conduct in recklessness/conscious disregard of the rights of Daniel Russell.

**ANSWER**:   **TASER denies generally and specifically the allegations contained in Paragraph 75 of the Complaint and denies liability.**

76.   As a direct and proximate result of the above-described defects in the subject product, as aforementioned, and the conduct of Defendant TASER International, Inc., as alleged above, in combination with the wrongful conduct of the other Defendants, Daniel Russell died.

**ANSWER**:   **TASER denies generally and specifically the allegations contained in Paragraph 76 of the Complaint and denies liability.**

WHEREFORE, Plaintiff demands money damages in the amount of $15 million dollars together with an award to the Plaintiff for reasonable attorney's fees and costs of litigation, as well as any other amounts this Honorable Court deems appropriate.

**ANSWER: TASER denies that Plaintiff is entitled to any relief and TASER denies liability.**

<u>**COUNT VI**</u>

<u>**BREACH OF DUTY TO WARN**</u>

**(Against Defendant TASER International, Inc.)**

77.     Plaintiffs incorporate by reference all of the foregoing allegations as if fully rewritten herein.

**<u>ANSWER</u>: TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

78.     Plaintiffs are informed and believe and therein allege that the Defendant police deputies were trained in their use of the TASER/ECD by compact disc media, oral and written instruction, training, warnings and other methods provided directly or indirectly to the Defendant deputies and the Appomattox County Sheriff's Department by Defendant TASER International, Inc.

**<u>ANSWER</u>: TASER lacks sufficient information or belief to enable TASER to answer Paragraph 78, and on those grounds, denies generally and specifically each and every allegation contained therein.**

79.     Plaintiffs are informed and believe and therein allege that Defendant TASER International, Inc. misrepresented, failed to disclose and/or failed to warn the Appomattox County Sheriffs Department and Deputies Denney Wright the following facts, among others:

a.     Falsely represented that its TASER/ECD was not lethal;

b.     Falsely represented that its TASER/ECD cannot cause cardiac arrest or cardiac arrhythmia;

c.     Falsely represented that its TASER/ECD cannot cause ventricular fibrillation;

d.     Falsely represented than an ECD can be safely fired at the front center of a suspect's body mass;

e.    Falsely represented that an ECD may be safely used on a suspect under the influence of alcohol;

f.    Falsely represented that an ECD affects the sensory and motor nervous systems, but cannot affect cardiac systems of a suspect;

g.    Failed to disclose and/or warn that an ECD is a potentially lethal device which could cause ventricular fibrillation or asystole, cardiac arrest, cardiac arrhythmia and hypoxic brain injury as a result;

h.    Failed to disclose and/or warn that the risk of death to someone in an agitated state because of voluntary intoxication is greatly increased by longer ECD shocks, and that law enforcement, including Deputies of the Appomattox County Sheriffs Office, should endeavor to deploy the ECD shocks as briefly as possible to minimize or eliminate the risk or cardiac arrest, cardiac arrhythmia, brain damage and/or death;

i.    Failed to disclose and/or warn that longer cycles and uses of an ECD on a single person increased the risk of ventricular fibrillation or asystole, cardiac arrest, cardiac arrhythmia, hypoxic brain injury and the serious potential consequences which the Plaintiff suffered;

j.    Falsely represented to users that TASERs are safer than high school sports;

k.    Falsely represented that there is "no reliable published data that proves TASER ECDs negatively affect the heart"

**ANSWER**:    **TASER denies generally and specifically the allegations contained in Paragraph 79 of the Complaint and denies liability.**

80. Defendant TASER International, Inc. intentionally and negligently represented to the Appomattox County Sheriff's Office and the individual Defendants all of the material and statements set forth herein above, including those set forth in the preceding paragraph, and many more of a similar nature.

**ANSWER**:    **TASER denies generally and specifically the allegations contained in Paragraph 80 of the Complaint and denies liability.**

81. These representations were, in fact, false. Defendant TASER International, Inc. knew that the misrepresentations were false when it made them, and/or made the representations recklessly and without regard for their truth.

**ANSWER**:   **TASER denies generally and specifically the allegations contained in Paragraph 81 of the Complaint and denies liability.**

82. Defendant TASER International, Inc. intended that law enforcement agencies, such as the Appomattox County Sheriff's Office, purchase its products, and that individual deputies such as the Defendant deputies, rely on the misrepresentations when using its products, and in fact, they did rely on these misrepresentations in purchasing deploying, training, instructing and otherwise using the ECD as a law enforcement tool in interacting with members of the public such as Daniel Russell.

**ANSWER**:   **TASER denies generally and specifically the allegations contained in Paragraph 82 of the Complaint and denies liability.**

83. Defendant TASER International, Inc. intentionally and/or negligently failed to disclose to the Appomattox County Sheriff's Office and other law enforcement agencies and to the Defendant deputies and other law enforcement deputies material and important facts that were known to Defendant TASER International, Inc. and could not have been discovered by law enforcement agencies, all as described herein above. These important and material facts include, but are not limited to:

a. That its TASER/ECDs can be in fact "lethal";

b. That its TASER/ECDs can, and do on occasion, cause or aggravate acidosis, ventricular fibrillation, cardiac arrest, cardiac arrhythmia, hypoxic brain injury and death;

c. That the risk of cardiac arrest or cardiac arrhythmia is significantly decreased if electrical discharges from the ECD are directed away from the chest and are minimized.

Furthermore, Defendant TASER International Inc. actively concealed these important material facts from law enforcement agencies, and/or prevented such agencies from discovering these facts. Instead, Defendant TASER International Inc. disclosed partial truths about its ECD but intentionally and negligently failed to disclose the important material facts set forth above.

**ANSWER**:   TASER denies generally and specifically the allegations contained in Paragraph 83 of the Complaint and denies liability.

84.   At all times mentioned herein, the Appomattox Sheriff's Office and the Defendant deputies were reliant upon Defendant TASER International, Inc. for appropriate warnings, instructions and for the necessary medical and scientific evidence so that deputies of the Appomattox Sheriff's Office could be properly trained and instructed in the use of the TASER/ECDs.

**ANSWER**:   TASER denies generally and specifically the allegations contained in Paragraph 84 of the Complaint and denies liability.

85.   The Appomattox Sheriff's Office, its deputies and other law enforcement agencies and their deputies did not fully know of the facts concealed by Defendant TASER International, Inc..

**ANSWER**:   TASER denies generally and specifically the allegations contained in Paragraph 85 of the Complaint and denies liability.

86.   Defendant TASER International, Inc. intended to deceive the Appomattox Sheriff's Office, other law enforcement agencies and the general public of the true facts regarding the risks of its TASER/ECD in order to promote and sell its TASER/ECD with artificial and inflated safety claims. The Appomattox County Sheriff's Office and other law enforcement agencies reasonably relied on Defendant TASER International, Inc.'s deception.

**ANSWER**:   TASER denies generally and specifically the allegations contained in Paragraph 86 of the Complaint and denies liability.

87.   As a legal result of Defendant TASER International Inc.'s misrepresentations and concealment, Daniel Russell died.

**ANSWER**:   TASER denies generally and specifically the allegations contained in Paragraph 87 of the Complaint and denies liability.

WHEREFORE, Plaintiff demands money damages in the amount of $15 million dollars together with an award to the Plaintiff for reasonable attorney's fees and costs of litigation, as well as any other amounts this Honorable Court deems appropriate.

**ANSWER:  TASER denies that Plaintiff is entitled to any relief and TASER denies liability.**

## COUNT VII

## PUNITIVE DAMAGES UNDER COMMON LAW

### (Against TASER International, Inc.)

88.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint and further alleges:

**ANSWER**:     **TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

89.     Plaintiff is entitled to punitive damages because the Defendant's wrongful acts and/or omissions were wanton or in conscious disregard of the rights of others. Defendants misled both the public and police forces across America, by making false representations about the safety and efficacy of their TASERs and by failing to provide adequate instructions and training concerning its use.

**ANSWER**:     **TASER denies generally and specifically the allegations contained in Paragraph 89 of the Complaint and denies liability.**

90.     Defendants downplayed, understated, and/or disregarded their knowledge of the serious risks associated with the use of the TASERs when aimed at the chest despite available information demonstrating a significant risk. Such risks and adverse effects could easily have been avoided had Defendant not concealed knowledge of the serious risks associated with the TASERs or provided proper training and instruction to physicians regarding use of the TASERs.

**ANSWER**:  **TASER denies generally and specifically the allegations contained in Paragraph 90 of the Complaint and denies liability.**

91.     Defendants' misrepresentations included knowingly withholding material information from their training manuals, advertising, and in studies they circulated to the medical community.

**ANSWER**:  **TASER denies generally and specifically the allegations contained in Paragraph 91 of the Complaint and denies liability.**

92.     Defendants failed to provide warnings that would have dissuaded health care professionals from allowing them to sell the TASERs, thus preventing health professionals and consumers, from weighing the true risks against the benefits of using the TASERs in victims checks.

**ANSWER**: **TASER denies generally and specifically the allegations contained in Paragraph 92 of the Complaint and denies liability.**

93.     Defendants failed to provide adequate training and instructions to police forces that could have prevented failure of the TASER causing serious harm and suffering to patients, including Daniel Russell.

**ANSWER**: **TASER denies generally and specifically the allegations contained in Paragraph 93 of the Complaint and denies liability.**

94.     As a direct and proximate result of Defendants' actions, Daniel Russell died and Defendants are liable to Plaintiff in an amount to be determined at trial.

**ANSWER**: **TASER denies generally and specifically the allegations contained in Paragraph 94 of the Complaint and denies liability.**

WHEREFORE, Plaintiff demands money damages in the amount of $15 million dollars together with an award to the Plaintiff for reasonable attorney's fees and costs of litigation, as well as any other amounts this Honorable Court deems appropriate.

**ANSWER:** **TASER denies that Plaintiff is entitled to any relief and TASER denies liability.**

<u>COUNT VIII</u>

**<u>PUNITIVE DAMAGES</u>**

**(Against Defendants Denney Wright and Appomattox County)**

95.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint and further alleges:

**ANSWER**: **TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

96.     Plaintiff is entitled to punitive damages because the Defendants' wrongful acts and/or omissions were wanton or in conscious disregard of the rights of others.  Defendants used and had a policy of using deadly force without justification or provocation

**ANSWER**: **TASER is not a party to Paragraph 96 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

97.     Daniel Russell offered no resistance and showed no signs of aggression before Defendant Denney Wright shot and killed him with a TASER weapon.

**ANSWER**: **TASER is not a party to Paragraph 97 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

98.     Appomattox County has a policy of encouraging and training Deputies to regularly shoot victims with TASERs without provocation or justification.

**ANSWER**: **TASER is not a party to Paragraph 98 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

99.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered injury and Defendants are liable to Plaintiff in an amount to be determined at trial.

**ANSWER**: **TASER is not a party to Paragraph 99 of the Complaint and does not respond to the allegations contained therein. To the extent that these allegations can be construed as applied to Defendant TASER, they are specifically denied.**

WHEREFORE, Plaintiff demands money damages in the amount of $15 million dollars together with an award to the Plaintiff for reasonable attorney's fees and costs of litigation, as well as any other amounts this Honorable Court deems appropriate.

**ANSWER:** **TASER denies that Plaintiff is entitled to any relief and TASER denies liability.**

## COUNT IX

## NEGLIGENCE UNDER COMMON LAW

### (Against TASER International, Inc.)

100.    Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint and further alleges:

**ANSWER**:   **TASER reasserts, affirms, and incorporates its answers to the allegations set forth in the Complaint above and denies liability.**

101.    Defendant owed a duty to Plaintiff to use reasonable care in the sale and distribution of the TASER.  Defendant's proper performance of this duty would have eliminated the risk that the device Defendant distributed and sold would become unsafe for its intended use.  Defendant breached this duty.

**ANSWER**:   **TASER states that the allegations in Paragraph 101 contain legal conclusions, to which no response is required.  However, to the extent that a response is required, TASER admits generally that it has a duty to exercise reasonable care.  TASER denies the remaining allegations contained in Paragraph 101 of the Complaint and denies liability.**

102.    Defendant had a duty to disclose the dangers associated with the use of TASERs to the chest of a victim.

**ANSWER**:   **TASER states that the allegations in Paragraph 102 contain legal conclusions, to which no response is required.  However, to the extent that a response is required, TASER denies generally and specifically the allegations contained in Paragraph 102 of the Complaint and denies liability.**

103.    Defendant had a duty to ensure that the TASERs distributed and sold were safe for use on the human chest.  Defendants had a duty to commission studies of such safety. Additionally, defendants had a duty that their representations to the public regarding the safety of their product was accurate.  Defendant failed to do so and was therefore negligent.

**ANSWER**:   **TASER states that the allegations in Paragraph 103 contain legal conclusions, to which no response is required.  However, to the extent that a response is required, TASER denies generally and specifically the allegations contained in Paragraph 103 of the Complaint and denies liability.**

104.    Defendant had a duty to exercise reasonable care to sell reasonably safe devices so as not to subject the ultimate consumer to unreasonable risk of harm.

**ANSWER**:   TASER states that the allegations in Paragraph 104 contain legal conclusions, to which no response is required.   However, to the extent that a response is required, TASER denies generally and specifically the allegations contained in Paragraph 104 of the Complaint and denies liability.

105.     Defendant was negligent, careless, reckless, grossly negligent and wanton, and breached its duties, in the manufacture, distribution and sale of the TASERs in all of the following respects listed throughout this Complaint.

**ANSWER**: TASER denies generally and specifically the allegations contained in Paragraph 105 of the Complaint and denies liability.

106.     As a direct and proximate result of Defendant negligence, carelessness, recklessness, gross negligence and wantonness, Daniel Russell died.

**ANSWER**: TASER denies generally and specifically the allegations contained in Paragraph 106 of the Complaint and denies liability.

WHEREFORE, Plaintiff demands money damages in the amount of $15 million dollars together with an award to the Plaintiff for reasonable attorney's fees and costs of litigation, as well as any other amounts this Honorable Court deems appropriate.

**ANSWER**:   TASER denies that Plaintiff is entitled to any relief and TASER denies liability.

**JURY DEMAND**

TASER hereby demands a trial by jury of all issues so triable.

**GENERAL DENIAL AND ADDITIONAL DEFENSES**

To the extent TASER failed to specifically respond to any allegation by Plaintiff in the Complaint, TASER hereby denies the same and denies liability. TASER denies that it is indebted to Plaintiff in any amount or under any legal or equitable theory.

In order that Defendant TASER does not waive them, Defendant TASER alleges, upon information and belief, the following affirmative and other defenses:

1.     The Complaint fails to state a claim upon which relief may be granted.

2.     Plaintiff cannot meet the burden of proof as to the claims alleged in the Complaint.

3.      Any damages suffered by Plaintiff or decedent were not proximately or legally caused by, or resulting from, the products manufactured by TASER or conduct of TASER.

4.      Plaintiff's and decedent's damages, if any, were caused, in whole or in part, by the contributory negligence of, and assumption of the risk by, Plaintiff's decedent who ignored and defied lawful instructions from law enforcement, failed to cooperate with law enforcement, and failed to use due care for his own safety.  The decedent's intentional acts, assumption of the risk, and contributory negligence are specifically pleaded in bar of the Plaintiff's right to recover in this action.

5.      The injuries, losses, or damages complained of by Plaintiff resulted from a superseding, intervening act of another person(s) or event, whether named herein or not, which was the direct and proximate cause of any damages, losses, or injuries, if any, complained of by Plaintiff. TASER had no control over the actions taken by others toward decedent or Plaintiff, and any alleged injuries suffered by Plaintiff or decedent arise directly out of independent conduct not controlled by TASER. By reason of intervening acts or events, TASER's liability, if any, is limited or otherwise barred.

6.      If Plaintiff or decedent suffered or sustained any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by the conduct, acts, omissions, activities, carelessness, recklessness, negligence, fraud, breach of obligations, and/or intentional misconduct of Plaintiff, the decedent, or others beyond TASER's supervision and control, thereby completely or partially barring Plaintiff's recovery.

7.      Any injury to Plaintiff or decedent was the consequence of pre-existing medical or physical conditions.

8.      To the extent that Plaintiff or decedent suffered any detriment, such detriment was unavoidable. The damages sustained by Plaintiff or decedent, if any, were the result of an unavoidable accident insofar as TASER is concerned, and occurred without any negligence, want of care, default, or other breach of duty to Plaintiff or decedent on the part of TASER.

9.      Any alleged injuries, to the extent they are found to be wholly or partially attributable to the product or products of TASER, which is expressly denied by TASER, were the direct and proximate result of an idiosyncratic reaction which was not reasonably foreseeable by TASER, and which was

not the result of any conduct or negligence on the part of TASER, nor the result of any defect in any warnings or product manufactured or distributed by TASER.

10.     Plaintiff's recovery is barred because TASER did not owe a duty to Plaintiff or decedent. TASER owed no legal duty to Mr. Russell, a criminal suspect.

11.     TASER denies that Plaintiff or decedent sustained any injury, damage, or loss, if any, by reason of any act or omission on the part of TASER, or any agent, servant, or employee of TASER.

12.     The events and damages alleged in the Complaint were open, obvious, and known to the Plaintiff and decedent, and therefore Plaintiff and decedent assumed the risk of any perils or damages to which they knowingly exposed themselves. Such negligence and careless conduct was the sole and proximate cause of any and all damages and injuries alleged in the Complaint and any recovery against TASER is therefore barred.

13.     There was no obligation on TASER to warn in that the alleged dangerous propensity was obvious and or known at the time the product was being used.

14.     The use of TASER''s product, if any, was by sophisticated users or learned intermediaries to whom TASER was not required to provide warnings of the risk of injury as alleged in the Complaint.

15.     The products alleged in the Complaint were not defective and there was no defect in the product or warnings for the product at the time that it left the possession of TASER.

16.     Any product manufactured by the TASER was not defective and did not deviate in a material way to from the manufacturer's specification or from otherwise identical units manufactured to the same manufacturing specification.

17.     Any product manufactured by TASER was not defective in design due to inherent characteristics of the product which is a generic aspect of the product which cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.

18.     TASER provided appropriate, adequate and sufficient warnings and instructions regarding the use of its product.

19.     Any TASER products at issue are state-of-the-art.

20.     The particular risks alleged in the Complaint were neither known nor should have been known by TASER, and TASER was therefore under no duty to warn Plaintiff, the decedent or law enforcement of any such risks as alleged in the Complaint.

21.      The risks of the subject product are outweighed by its benefits in that any alternate design would entail unreasonable cost, be uneconomic or impractical, interfere with the product's performance, or create other or increased risks.

22.     Any purported defects in the products alleged in the Complaint were caused by alteration and/or modification of the product after its purchase.

23.     Recovery against TASER is barred to the extent anyone failed to use the allegedly defective product in its intended manner or in a reasonable manner.

24.     Subject to further investigation and discovery, any purported defects in the products alleged in the Complaint resulted from unforeseeable misuse of the product by third parties.

25.     To the extent the product was being used in a reasonable manner appropriate to the purpose for which it was intended, recovery against TASER is barred.

26.     TASER did not make any false statements, misrepresentations, or negligently or intentionally conceal information about its products.

27.     TASER is informed and believes and thereon alleges that any amount which TASER is held liable and owing to the Plaintiff is offset against any amount recovered by Plaintiffs from any other responsible parties.

28.     Plaintiff failed to mitigate the damages, if any, which were sustained, and to exercise reasonable care to avoid the consequences of harms, if any, in that, among other things, decedent or Plaintiff failed to use reasonable diligence in caring for any injuries, failed to use reasonable means to prevent aggravation of any injuries and failed to take reasonable precautions to reduce any injuries and damages.

29.     The product in question was reasonably safe for its intended use as manufactured and designed when it left the possession of the manufacturer.

30.     A warning by TASER could not have been effective in lessening Plaintiff's decedent's risk of personal injury

31.     TASER did not have, at all times relevant to the Complaint, actual or constructive knowledge of the alleged danger or risk inherent in the use of the products as alleged in the Complaint.

32.     The disclaimer and limitations that accompany TASER ECDs bar Plaintiff's warranty claims.

33.      To the extent that punitive damages are alleged against TASER, the imposition of punitive damages under Virginia law violates the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution.

34.     To the extent Plaintiff's claim for damages exceeds any federal or state statutory limitation on recovery, TASER affirmatively asserts all such federal and state statutory limitations on recovery, including without limitation Virginia Code § 8.01-38.1.

35.      Plaintiff's claims are barred by failure of notice.

### RESERVATION OF ADDITIONAL DEFENSES

Defendant reserves the right to plead as additional affirmative defenses, any of the items set forth in Rules 8(c) and 12, Fed.R.Civ.P., and any and all Virginia Codes, Statutes and Case Precedence, and any other matter constituting an avoidance or affirmative defense as the same may be revealed during disclosure and/or discovery proceedings in this matter, including without implied limitation any defense based on applicable statutes of limitation, waiver, or the failure of privity for economic loss damages.

WHEREFORE, TASER respectfully request judgment dismissing the Complaint and decreeing that Plaintiff take nothing by it, awarding TASER its costs, attorneys' fees, and other and further relief as may be just and proper under the circumstances, including costs and fees to the extent permitted under state and federal law.

TASER International, Inc.

*/s/   Jeremy E. Carroll*
Jeremy E. Carroll (VSB # 41331)
Glenn, Feldmann, Darby & Goodlatte
37 Campbell Avenue, S.W.
P. O. Box 2887
Roanoke, Virginia  24001-2887
Telephone:      540.224.8036
Facsimile:       540.224.8050
E-mail:           jcarroll@gfdg.com

*Counsel for TASER International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2011 I electronically filed the foregoing Answer to Plaintiff's Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Peter A. Miller, Esq., The Miller Firm, LLC, 108 Railroad Avenue, Orange, Virginia 22960; Elizabeth Kay Dillon, Esq., Guynn Memmer & Dillon, PC, 415 South College Avenue, Salem, Virginia 24153; John G. Overstreet, Esq., 103 East Main Street, Bedford, Virginia 24523; and George Walerian Chabalewski, Esq., Offices of the Attorney General, 900 East Main Street, Richmond, Virginia 23219.

*/s/ Jeremy E. Carroll*