CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 1 3 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

ANITA RUSSELL,                          )
                                        )
        Plaintiff,                      )       Civil Action No. 3:11-cv-00075
                                        )
v.                                      )       **MEMORANDUM OPINION**
                                        )
DENNEY WRIGHT, et al.,                  )       By:  Hon. Glen E. Conrad
                                        )       Chief United States District Judge
        Defendants.                     )

This case is presently before the court on various motions filed by the plaintiff and the

defendants.  For the reasons set forth below, the court will grant the plaintiff's motion for leave

to file a superseding second amended complaint and will deny the defendants' motions to

transfer venue.

I.      **Factual and Procedural Background**[1]

During the late evening hours of October 30, 2010, Appomattox County Sheriff's

Deputies Denney Wright, Christopher Sams, and John Maddox were dispatched to 7724 Red

House Road in Appomattox, Virginia.  (Docket No. 1-1 at 3.)  The deputies were dispatched in

response to a 911 call from Andrew Russell, a son of Daniel Russell and Anita Russell, reporting

a potential injury to his little brother, Rhett Russell, which occurred after an argument with their

father.  (Id. at 4.)  Following the dispute, Daniel Russell made sure that his son Rhett was okay,

and then left his home, entered his vehicle, and proceeded to drive away from his house.  (Id.)

However, as the three deputies neared the Russells' residence, they saw Daniel Russell's vehicle

pull out of the driveway.  (Id.)  Thereafter, the deputies turned around, and proceeded to follow

Mr. Russell's vehicle with their lights and sirens activated.  (Id.)

---

[1]     As discussed below, the plaintiff sought leave in state court to file a first amended complaint and,
thereafter, filed the proposed first amended complaint.  However, it is unclear from the record whether the state
court granted the plaintiff's motion to amend the complaint.  For this reason, the following factual summary is
adopted from the allegations contained in the original complaint.

Upon becoming aware of the deputies' sirens, Mr. Russell slowed down, activated his blinker, and pulled over at the next safe location in an empty parking lot.  (Id.)  There was no shoulder on the short stretch of road between the Russell's residence and the parking lot.  (Id.)  After stopping his vehicle, Mr. Russell exited and "took approximately three steps with his arms raised to demonstrate that he was unarmed and would comply with the deputies' instructions."  (Id.)  Mr. Russell stopped walking, several yards before reaching the deputies, and remained standing with his arms raised.  (Id.)  According to the complaint, Mr. Russell manifested no signs of aggression and no signs that he was attempting to evade arrest.  (Id.)

At this point, the deputies shouted to Mr. Russell to "get on the ground," but "gave him only a few seconds to comply with the request."  (Id.)  Then, "without any objective justification to do so," defendant Wright "unreasonably, inappropriately, and unnecessarily shot [Mr.] Russell in the chest" with his Taser, "causing (50,000) volts of electricity to flow through his body."  (Id. at 4–5.)  As a direct result of this "unnecessary and unprovoked attack," the complaint alleges, Mr. Russell went into cardiac arrest, became unresponsive, slipped into a coma, and died six months later, on June 1, 2011.  (Id. at 5.)

On October 19, 2011, Mrs. Russell, as the personal representative of the estate of Daniel Russell, initiated this lawsuit in the Circuit Court for Albemarle County.  According to the parties' filings, Mrs. Russell resides in Albemarle County.  (Docket No. 10 at 1; Docket No. 14 at 1, 6.)  In the original complaint, the plaintiff named as defendants Denney Wright, Appomattox County, the Commonwealth of Virginia, and Taser International, Inc. (the manufacturer of the Taser gun), and alleged various claims pursuant to the Virginia Tort Claims Act; 42 U.S.C. § 1983; Virginia tort law; and Virginia breach of warranty law.  Mrs. Russell sought $15 million in compensatory and punitive damages.

2

On November 15, 2011, Mrs. Russell sought leave in state court to file a first amended complaint, in which the plaintiff asserted that the Commonwealth of Virginia was not liable for the actions of defendant Wright, but was liable for the actions of Lynchburg Police Officers Michael Staley and Anthony Martin, who allegedly trained members of the Appomattox County Sheriff's Office in the use of Tasers and served as local Taser experts for area law enforcement. (Docket No. 1-1 at 44–45.)  The plaintiff also sought to add a new count of assault and battery against Wright.  (Id. at 61–62.)  Thereafter, on November 18, 2011, the plaintiff moved to nonsuit her claim against the Commonwealth of Virginia.  (Id. at 75.)  On November 30, 3011, the state court entered an order of nonsuit as to the Commonwealth of Virginia (id. at 77) and, on that same day, Wright removed the case to the United States District Court for the Western District of Virginia, Charlottesville Division.  (Docket No. 1.)

On December 9, 2011, after the case was removed to this court, defendant Appomattox County filed a motion under Federal Rule of Civil Procedure 12(b)(5) and (b)(6) to dismiss the complaint for insufficient service of process and for failure to state a claim upon which relief may be granted.  (Docket No. 3.)  With respect to the Rule 12(b)(5) argument, Appomattox County asserts that the plaintiff failed to serve the proper officers with process as required by the Federal Rules of Civil Procedure and by the Virginia Code.  (Id. at 1–2.)  With respect to the Rule 12(b)(6) argument, the defendant asserts that the Appomattox County Sheriff is a constitutional officer under the Constitution of Virginia and, furthermore, that the Sheriff and his deputies are not employees or agencies of county or municipal governments.  (Id. at 2–3.)

After considering Appomattox County's motion to dismiss, Mrs. Russell filed on December 22, 2011 a motion for leave to file a second amended complaint, in which the plaintiff seeks to drop Appomattox County as a defendant, and to add as defendants the Appomattox County Sheriff's Office and Sheriff O. Wilson Staples.  (Docket No. 7 at 2.)  Additionally, the

plaintiff seeks to include the appropriate caption and to delete reference to the Commonwealth of Virginia as a defendant.  (Id.)

Thereafter, on December 23, 2011, Taser International filed a motion to transfer venue from the Charlottesville Division to the Lynchburg Division of this court.  (Docket No. 10.)  The plaintiff filed its brief in opposition to the motion to transfer venue on January 6, 2012.  (Docket No. 14.)  Taser International filed its reply brief on January 17, 2012.  (Docket No. 18.)  Then, on January 18, 2012, defendants Appomattox County and Wright filed a motion to transfer venue to the Lynchburg Division.  (Docket No. 19.)

The court heard argument on these motions on January 27, 2012.  At the conclusion of the hearing, the court instructed the plaintiff to file a superseding second amended complaint and permitted the defendants time in which to file any objections.  The court informed the parties that it would take all of the motions under advisement pending the filing of the superseding second amended complaint and any objections thereto.  On February 3, 2012, Mrs. Russell filed a motion for leave to file a superseding second amended complaint, in which the only significant distinction from the original second amended complaint for which she sought leave to file is that she no longer seeks to add as defendants the Appomattox County Sheriff's Office or Sheriff O. Wilson Staples.  (Docket No. 28.)  The period for objections has passed without any objections being filed by the defendants.  Hence, the motions are ripe for disposition.

## II.   **Discussion**

### 1.   **Plaintiff's motion for leave to file superseding second amended complaint**

Federal Rule of Civil Procedure 15 provides that "[a] party may amend its pleading once as a matter of course[, but] . . . [i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a).  "The court should freely give leave when justice so requires."  Id.  The United States Court of Appeals for the

4

Fourth Circuit has stated that "[t]he law is well settled 'that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis in original) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).

Bearing in mind the standard set forth by Rule 15 and the interpreting case law, there appears to be no reason on the facts of this case why the court should not allow the plaintiff to file a superseding second amended complaint. Furthermore, none of the defendants has filed any opposition to the plaintiff's motion to amend. Therefore, the court will grant the motion for leave to file a superseding second amended complaint.[2] (Docket No. 28.)

## 2.     Motions to transfer venue by defendants Taser International and Wright[3]

As stated above, Taser International and Wright filed motions pursuant to 28 U.S.C. § 1404(a) to transfer venue from the Charlottesville Division to the Lynchburg Division.[4] Section 1404(a) of Title 28 provides that, for the convenience of the parties and witnesses and where the interests of justice would be served, a district court may transfer a case to another district or division within a district where the case might have been brought. Beacon Wireless Solutions, Inc. v. Garmin Int'l, Inc., Civil Action No. 5:11-cv-00025, 2011 WL 4737404, at *4 (W.D. Va. Oct. 5, 2011). In applying § 1404(a), the decision to transfer a case rests soundly within the discretion of the district court. See Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1257

---

[2]      Because the court will grant this motion, the court will dismiss as moot the plaintiff's original motion for leave to file a second amended complaint. (Docket No. 7.) Likewise, because the superseding second amended complaint drops Appomattox County as a defendant, the court will dismiss as moot Appomattox County's motion to dismiss under Rule 12(b)(5) and (b)(6). (Docket No. 3.)

[3]      Appomattox County joined in Wright's motion to transfer venue, but, as stated above, Appomattox County will be dropped as a defendant in this case pursuant to the superseding second amended complaint. For this reason, the court will analyze the motions to transfer venue only as they relate to Wright and Taser International.

[4]      Taser International filed its motion to transfer venue first, advancing several arguments in support of its motion. (Docket No. 10.) Wright filed his motion to transfer venue about one month later. Wright advanced no arguments in his motion, but instead, relied on the same reasons set forth in Taser International's motion. (Docket No. 19.)

5

(4th Cir. 1991); <u>S. Ry. Co. v. Madden</u>, 235 F.2d 198, 201 (4th Cir. 1956); <u>Simmons v. Johnson</u>, No. Civ. A. 7:05CV00053, 2005 WL 3159555, at *1 (W.D. Va. Nov. 22, 2005); <u>see also</u> <u>Stewart Org., Inc. v. Ricoh, Corp.</u>, 487 U.S. 22, 29 (1988) (stating that 28 U.S.C. § 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness'" (quoting <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 622 (1964))).

The United States Court of Appeals for the Fourth Circuit and United States District Courts in Virginia have elaborated on the factors that are properly considered in assessing when a transfer would serve both convenience and the interests of justice. <u>S. Ry. Co.</u>, 235 F.2d at 200–01; <u>Gen. Creation LLC v. Leapfrog Enters., Inc.</u>, 192 F. Supp. 2d 503, 504–05 (W.D. Va. 2002); <u>Verizon Online Servs., Inc. v. Ralsky</u>, 203 F. Supp. 2d 601, 623–24 (E.D. Va. 2002). As a general matter, the plaintiff's choice of venue commands deference. <u>Doe v. Connors</u>, 796 F. Supp. 214, 221 (W.D. Va. 1992); <u>see also</u> <u>Akers v. Norfolk & W. Ry. Co.</u>, 378 F.2d 78, 80 (4th Cir. 1967) (per curiam) ("Of course, we recognize the primary right of the plaintiff to choose his forum, a selection not easily to be overthrown."). However, the plaintiff's choice of venue demands less deference when the suit is not filed in the district and division in which he resides, <u>Glamorgan Coal Corp. v. Ratners Group, PLC</u>, 854 F. Supp. 436, 437 (W.D. Va. 1993), or when little exists to connect the chosen forum with the cause of action. <u>Se. Textile Mach., Inc. v. H. Warshow & Sons, Inc.</u>, No. 4:05CV00066, 2006 WL 213723, at *2 (W.D. Va. Jan. 27, 2006). Although the degree of deference due to the plaintiff may vary, the defendant nonetheless still shoulders the burden "to show that 'the balance of equities is in [its] favor [and] that judicial economy and convenience to all parties favor suit in another forum.'" <u>Doe</u>, 796 F. Supp. at 221 (quoting <u>Eldridge v. Bouchard</u>, 620 F. Supp. 678, 684 (W.D. Va. 1985)). Federal courts in Virginia often assess the following factors in determining whether the balance of equities favors

6

transferring a case to a different venue: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) systematic integrity; (4) fairness; (5) the availability of compulsory process; (6) the cost of obtaining the attendance of witnesses; (7) ease of access to sources of proof; and (8) the interests in having local controversies decided at home. Beacon Wireless Solutions, Inc., 2011 WL 4737404, at *4; Optical Cable Corp. v. Mass. Elec. Constr. Co., 21 F. Supp. 2d 582, 592 (W.D. Va. 1998). The weight accorded to these factors should correspond with the degree that each impacts the policy behind § 1404(a)—to make the trial "easy, expeditious and inexpensive." Glamorgan Coal Corp., 854 F. Supp. at 437 (internal quotation marks omitted).

In their motions to transfer venue, the defendants correctly assert that this case could have been filed in the Lynchburg Division, the potential transferee forum.[5] See Finmeccanica S.p.A. v. Gen. Motors Corp., No. 1:07-cv-794, 2007 WL 4143074, at *2 (E.D. Va. Nov. 19, 2007) ("In applying Section 1404(a), a district court must first decide whether the claims might have been brought in the transferee forum."). However, the fact that this action could have been brought in the Lynchburg Division does not inevitably result in the conclusion that the defendants' motions should be granted. Rather, as articulated above, the defendants shoulder the burden to demonstrate that the balance of equities favors transfer to the proposed transferee forum. The factors relevant to this § 1404(a) analysis are examined below.

---

[5]     The plaintiff concedes in her responsive brief that this action properly could have been brought in the Lynchburg Division. (Docket No. 14 at 5.) The court agrees with the parties that this action could have been brought in the Lynchburg Division. Pursuant to Local Rule 2(b), civil actions for which venue is proper in this district must be brought in the proper division as well. W.D. Va. Gen. R. 2(b). In arriving at this divisional venue determination, Local Rule 2(b) further provides that the venue rules for federal district courts in the United States Code should be adopted, substituting the word "division" for the terms "judicial district" and "district." Id. The relevant venue rule for federal district courts is contained in 28 U.S.C. § 1391(b), which provides, in pertinent part, that an action can be brought only in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b) (2006). Clearly, this action could have been initiated in the Lynchburg division because all of the defendants reside in Virginia and because Taser International is deemed to reside in the Lynchburg Division based on the fact that it is subject to personal jurisdiction in that division. Id. § 1391(b)(1). Furthermore, venue is also proper in the Lynchburg Division because a "substantial part of the events . . . giving rise to the claim occurred" in that division. Id. § 1391(b)(2).

a.    **Convenience of the witnesses**

In support of their motions to transfer venue, the defendants assert that all of their party witnesses reside within the Lynchburg Division. (Docket No. 10 at 5.) The plaintiff urges the court to deny the motion to transfer venue based on the fact that she resides within the Charlottesville Division. (Docket No. 14 at 6–7.) However, "courts have repeatedly emphasized that in considering whether to transfer a case under 28 U.S.C. § 1404(a), the inconvenience to party witnesses is not afforded the same weight as the inconvenience to non-party witnesses." Beacon Wireless Solutions, Inc., 2011 WL 4737404, at *5 (internal quotation marks omitted) (quoting USA Labs., Inc. v. Bio-Engineered Supplements & Nutrition, Inc., No. 1:09cv47, 2009 WL 1227867, at *4 (E.D. Va. May 4, 2009)). Both parties have identified non-party witnesses in this case. Specifically, the plaintiff identifies her two sons and the medical personnel who treated Daniel Russell soon after he was shot. (Docket No. 14 at 8–9.) These non-party witnesses reside in Albemarle County. The defendants identify Appomattox County Sheriff's Deputies Sams and Maddox, who were present when Wright allegedly utilized the Taser against Mr. Russell. (Docket No. 18 at 11–12.) These non-party witnesses reside in Appomattox County. Hence, inconvenience inevitably will accrue to some non-party witnesses in this case whether the case is transferred to the Lynchburg Division or is retained in the Charlottesville Division. The defendants may not secure a transfer of venue that would merely shift inconvenience from one side to the other. See Rockingham Precast, Inc. v. Am. Infrastructure-Md., Inc., Civil Action No. 5:11cv00024, 2011 WL 5526092, at *6 (W.D. Va. Nov. 14, 2011) ("[T]ransfers of venue are not available merely to shift inconvenience from one side to another." (internal quotation marks omitted) (quoting AAI Corp. v. Applied Geo Techs., Inc., Civil No. JKB-11-608, 2011 WL 3678903, at *4 (D. Md. Aug. 22, 2011))). In other words, because the analysis of the convenience of the witnesses factor demonstrates that one side's non-party

witnesses will inevitably suffer inconvenience, the defendants have failed to carry their burden of showing that a consideration of this factor favors a transfer.  <u>Doe</u>, 796 F. Supp. at 221.

      **b.**     **Convenience of the parties and ease of access to sources of proof**

The defendants claim that they would be inconvenienced by travelling from Appomattox County to the federal courthouse in Charlottesville.  (Docket No. 10 at 5–6.)  While this might be true, disturbing the plaintiff's choice of forum and thereby requiring her to travel from Albemarle County to the federal courthouse in Lynchburg would likewise inconvenience her. See <u>Rockingham Precast, Inc.</u>, 2011 WL 5526092, at *6 ("[T]ransfers of venue are not available merely to shift inconvenience from one side to another." (internal quotation marks omitted) (quoting <u>AAI Corp.</u>, 2011 WL 3678903, at *4)); <u>see also</u> 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3849, at 164–65 (3d ed. 2007) ("A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer.").  As the plaintiff points out, any inconvenience to the defendants in travelling from Appomattox County to Charlottesville is belied by the inconsequential convenience that would accrue to them if the action were transferred to the Lynchburg Division.[6]  Furthermore, as the plaintiff emphasizes, the defendants do not claim that the sources of proof upon which they will rely are not amenable to easy transportation.  Hence, the defendants have failed to carry their burden of showing that a consideration of this factor favors a transfer of venue.

      **c.**     **Systematic integrity and fairness**

An analysis of this factor requires the court to consider an argument by the defendant relating to underlying state and federal venue rules.  The defendants contend that, but for the

---

[6]     The plaintiff explains, and the defendants do not dispute, that the distance from Appomattox, Virginia to the federal courthouse in Charlottesville is 64.11 miles, whereas the distance from Appomattox, Virginia to the federal courthouse in Lynchburg is 22.74 miles—a difference of about 30–40 minutes of travel time.  (Docket No. 14 at 9.)

claim pursuant to the Virginia Tort Claims Act, this action could have been originally brought in state court only in the Appomattox County Circuit Court.[7] In that situation, the defendants argue, the case would have been removed to the Lynchburg Division of this court. Furthermore, the defendants seem to argue that it is not fair to retain venue in the Charlottesville Division because the case is in this division based only upon defendant Wright's decision to remove it from state court to federal court. Because the only claim that permitted venue in state court (a claim under the Virginia Tort Claims Act) has since been nonsuited—and, furthermore, was nonsuited before the defendants removed the case to federal court—the defendants appear to argue that the subsequent removal to federal court in the Charlottesville Division is somehow tainted by the fact that the reason for the case originally being in state court is now moot. (Docket No. 10 at 3, 5.) The defendants further argue that this case could not properly have been brought originally in the Charlottesville Division of this court under 28 U.S.C. § 1391(b) because all of the relevant events occurred in the Lynchburg Division. They assert that the only connection that this case bears to the Charlottesville Division is that the plaintiff resides within the division, which, according to the defendants, would be insufficient to support a finding of venue if the case originally had been filed in this division.

To the extent that the defendants' argument could be construed as one that a transfer of venue should be effected because venue in the Charlottesville Division is improper, this argument fails based on the fact that the local venue rules for this district would allow for venue in the Charlottesville Division because, as the plaintiff points out, Taser International is subject

---

[7] Pursuant to Virginia's preferred venue statute, an action under the Virginia Tort Claims Act may be brought in the county or city where the claimant resides. Va. Code § 8.01-261(18)(a) (West 2012). However, if the action had not originally contemplated a claim under the Virginia Tort Claims Act, the action could have been brought only in the Appomattox County Circuit Court, the defendants claim. Id. § 8.01-262.

to personal jurisdiction in this division.[8]  W.D. Va. Gen. R. 2(b).  In any event, such an argument is properly made pursuant to a motion under 28 U.S.C. § 1406(a).  However, the defendants' motions were not filed under § 1406(a), but instead, were filed under § 1404(a).  See Van Dusen, 376 U.S. at 634 ("Although both sections were broadly designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege.").  Accordingly, the court will examine the defendants' argument as it bears on the only relevant inquiry in this § 1404(a) analysis—whether convenience and the interests of justice favor transfer to the Lynchburg Division.

The defendants cite predominantly to two cases as support for their argument that convenience and the interests of justice and, more specifically, the systematic integrity and fairness factors, advocate for a transfer of venue.  The defendants rely on Mullins v. Equifax Information Services, LLC, No. Civ. A. 3:05CV888, 2006 WL 1214024 (E.D. Va. Apr. 28, 2006), and on Southeastern Textile Machinery, Inc. v. H. Warshow & Sons, Inc., No. 4:05CV00066, 2006 WL 213723 (W.D. Va. Jan. 27, 2006), for the proposition that this court must consult state and local federal venue rules when deciding a motion to transfer venue under § 1404(a).  While the defendants might be correct that an analysis under the systematic integrity and fairness factors require the court to consider such venue rules, the cases cited by the defendants are distinguishable on their facts.

First, in Mullins, the court consulted the local federal venue rules only within the context of an analysis under § 1406(a) to determine whether venue was improper in the selected division.

---

[8]      Although the defendants do not contest the fact that Taser International is subject to personal jurisdiction in this division (Docket No. 18 at 9–10), the defendants argue that interpreting 28 U.S.C. § 1391(b) as allowing venue in this division effectively eliminates "any need for a connection between the operative facts of a case and the venue selected for the case whenever there is a corporate defendant." (Id. at 10.)  However, this argument is flatly defeated by the facial language of § 1391(b), which allows for venue in "a judicial [division] in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).

Mullins, 2006 WL 1214024, at *3–4. Furthermore, the court considered the local federal venue

rules because, unlike the action in the instant case (which was removed from state court), the

action in Mullins had been initiated in federal court. Id. at *4. Hence, this court is of the opinion

that Mullins does not lend support to the defendants' position.

  Second, in Southeastern Textile Machinery, Inc., the court consulted the Virginia venue

statute in analyzing a § 1404(a) motion to transfer venue in a case that had been removed from

state court. Se. Textile Mach., Inc., 2006 WL 213723, at *4. However, the court correctly

recognized that it was not bound by state venue law. Id. Furthermore, in that case, venue was

improperly laid in the particular state court in which the action was commenced and from which

the case was removed to federal court. Id. at *4–5. In contrast, the action in the instant case was

properly brought in the Albemarle County Circuit Court—the fact that the Virginia Tort Claims

Act claim, the only reason that venue allegedly was properly laid in Albemarle County, was later

nonsuited does not somehow vitiate the continuing propriety of venue in that court. Hence,

Southeastern Textile Machinery, Inc. does not lend great support to the defendants' cause, either.

  In any event, as the court in Southeastern Textile Machinery, Inc. properly recognized,

this wrinkle in the federal venue transfer analysis, caused by the consideration of state venue

rules, triggers the systematic integrity and fairness factors. See id. at *4 ("There are . . . practical

considerations of timing and limitations of relief available to a defendant who is sued in an

improper state court venue and wishes to remove the case to federal court."); id. ("If a defendant

opts to challenge state court venue in state court, he will likely not have time to remove the case

to federal court if his challenge fails."). Based on the foregoing analysis, the court believes that

the systematic integrity and fairness factors, at most, create a tie with respect to the parties'

respective interests. Even if these factors favor the defendants, that situation would not

necessarily mean that a transfer of venue would be in order. Rather, these factors must be

considered along with all of the other factors in determining what the "balance of equities"

dictates. Doe, 796 F. Supp. at 221 (internal quotation marks omitted) (emphasis added).

### d.  Interests in having local controversies decided at home

Although the core events that gave rise to this lawsuit undeniably occurred within the

Lynchburg Division, the plaintiff contends that Charlottesville nonetheless possesses a strong

interest in the resolution of this case:

> This case will help define the limits as to the acceptable amount of force that a
> law enforcement officer may use on a citizen. TASERs are regularly deployed
> against Charlottesville and Albemarle County citizens. Should Plaintiff be
> successful then the lawsuit will cause local law enforcement officers to refrain
> from the inappropriate use of TASERs and will thus protect the residents of this
> area from unnecessary injury.

(Docket No. 14 at 11.) Even if this factor weighs more heavily in favor of the defendants within

the context of this § 1404(a) analysis, the bent of a solitary factor, as stated above, does not

necessarily dictate a certain outcome on this motion to transfer venue.

### e.  Balance of factors

The court determines that, based on the preceding examination of the relevant factors, a §

1404(a) analysis advises in favor of retaining venue in the Charlottesville Division. The

plaintiff's action against Taser International, which is not headquartered in Virginia, is one for

products liability and, as such, it matters little where the action is brought. Hence, in considering

the defendants' motion to transfer venue, the court observes that this action distills into one

between a widow and the deputy who allegedly shot her husband with a Taser. In such

circumstances, and for the reasons detailed above, the balance of equities weighs in favor of

allowing the plaintiff to choose her own forum. Indeed, the court must afford deference to the

plaintiff's choice of venue. The defendants contend that the plaintiff's choice of venue should be

accorded no deference because the action was originally filed in state court and because the facts

13

alleged in the complaint bear little relationship to the Charlottesville Division.  However, the defendants disregard the fact that a plaintiff's choice of venue generally commands deference, Doe, 796 F. Supp. at 221, and, furthermore, demands even more deference when the suit is filed in the plaintiff's home forum.  See Rockingham Precast, Inc., 2011 WL 5526092, at *3 ("[A] plaintiff's choice of its home forum is given more weight than its choice of a foreign forum." (internal quotation marks omitted) (quoting GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 1999))); Alpharma, Inc. v. Purdue Pharma L.P., 634 F. Supp. 2d 626, 633 (W.D. Va. 2009) (stating that a defendant must show overwhelming inconvenience to prevail on a motion to transfer venue when the plaintiff initiated the suit in his home forum).  Furthermore, the court notes that the defendants still shoulder the burden "to show that 'the balance of equities is in their favor [and] that judicial economy and convenience to all parties favor suit in another forum.'"  Doe, 796 F. Supp. at 221 (quoting Eldridge, 620 F. Supp. at 684).  As the foregoing analysis demonstrates, the defendants have failed to satisfy this burden—they have failed to show that the balance of equities tilts in their favor and that judicial economy and convenience to all parties favor suit in the Lynchburg Division, as opposed to the Charlottesville Division.

## III.    Conclusion

For the reasons detailed above, the court will grant the plaintiff's motion for leave to file a superseding second amended complaint.  Accordingly, the court will dismiss as moot both the plaintiff's original motion for leave to file a second amended complaint and Appomattox County's Rule 12(b)(5) and (b)(6) motion.  Furthermore, the court will deny the defendants'

motions to transfer venue.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

**ENTER**: This ___12ᵗʰ___ day of March, 2012.

_____
Chief United States District Judge