CLERK'S OFFICE U.S. DIST. COURT
AT C'VILLE
FILED

FEB 15 2013

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

ANITA RUSSELL, Personal Representative )
for the Estate of Daniel Russell,       )
                                         )        Civil Action No. 3:11-cv-00075
        Plaintiff,                       )
                                         )
v.                                       )        **MEMORANDUM OPINION**
                                         )
DENNEY WRIGHT, et al.,                   )
                                         )        By:  Hon. Glen E. Conrad
        Defendants.                      )        Chief United States District Judge

The parties in this civil suit have filed cross motions to exclude certain expert witnesses
from testifying at trial.  The issues have been fully briefed and are ripe for adjudication.

## I.      Applicable law

To be admissible under Federal Rule of Evidence 702, expert testimony must be both
reliable and relevant.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993); see
also United States v. Crisp, 324 F.3d 261, 268 (4th Cir. 2003) ("[The] touchstones for admissibility
under Daubert are two: reliability and relevancy.").   Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto in
> the form of an opinion or otherwise, if (1) the testimony is based upon sufficient
> facts or data, (2) the testimony is the product of reliable principles and methods, and
> (3) the witness has applied the principles and methods reliably to the facts of the
> case.

Fed. R. Evid. 702.  Rule 702 was amended in 2000 in response to Daubert.  That case set forth a
number of nonexclusive and nondispositive factors for courts to consider in weighing motions to
exclude expert testimony.  These include: "(1) whether a theory or technique can be or has been
tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique

has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community." Stoots v. Werner Co., No. 7:04cv531, 2005 WL 3547122, *1 (W.D. Va. Dec. 28, 2005) (citing Daubert, 509 U.S. at 592-94).

In addition to those factors, courts must ensure that expert opinions "are based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." Oglesby v. General Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999) (emphasis in original). Expert opinions that are "based on assumptions which are speculative and are not supported by the record" may be excluded. Tyger Constr. Co., Inc. v. Pensacola Constr. Co., 29 F.3d 137, 142 (4th Cir. 1994). Courts have "broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend on the unique circumstances of the expert testimony involved." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999). "[T]he court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to being tested by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" Id. (quoting Daubert, 509 U.S. at 596). The proponent of the testimony bears the burden of proving by a preponderance of proof that the evidence is admissible under this standard. See Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001).

## II.    TASER's motion to exclude Dr. Kenneth Laughery

Dr. Laughery is Professor Emeritus at Rice University, where he previously chaired the psychology department. He is an expert in the field of Human Factors and Ergonomics, and was President of the national Human Factors and Ergonomics Society. He has published numerous

articles and books on the subject, and frequently serves as an expert witness on the topic of product warnings and instructions.

TASER argues that Dr. Laughery's opinions are not admissible because he has failed to review all of the training materials and warnings at issue in this case. Dr. Laughery's report indicates that he did not review Version 17 of TASER's training materials at all, and only briefly reviewed Version 16.[1] He also did not review the two most up to date product warnings issued before the incident. TASER further notes that Dr. Laughery did not know which materials were included with the X26 that was sold to the Appomattox County Sherriff's office, or which training version was used in instructing Wright on the device. TASER argues that because Dr. Laughery did not review the later, more explicit warnings regarding the potential dangers of chest shots, he has at best an incomplete understanding of the overall warnings systems in place at the time of the incident. As a result, TASER asserts that he is not qualified to assist the jury in understanding the effectiveness of the product's warnings. In support, TASER cites Rich v. TASER International, Inc., No. 2:09-cv-02450, 2012 WL 1080281 (D. Nev. Mar. 30, 2012), in which a proposed expert was excluded based in part on his failure to review the warnings and training materials in place at the time of the officer's training. In that case, the expert had reviewed a more up to date set of instructions than those used in training the officer. Id. at *5. In excluding his testimony, the Court held, "[the expert] does not know what warnings and training material the [officer] received. For this reason, he cannot offer a reliable opinion of warnings he cannot identify." Id. Likewise, here TASER argues that any testimony of Dr. Laughery concerning the warnings' effectiveness in communicating the potential risks of chest shots will necessarily be incomplete and unreliable.

Russell does not dispute which materials Dr. Laughery reviewed, but instead contends that his opinions remain reliable because they are based on a review of the series of interim

---

[1] Version 16 is included in the list of materials reviewed by Dr. Laughery, but in his deposition he stated that he only "very quickly" scanned the Version 16 training program. (Laughery Dep. 82, 94.)

communications issued by TASER which emphasized the risk mitigation justification for lowering the preferred target area. Indeed, Dr. Laughery's opinions in his expert report focus almost exclusively on the effect of these communications. For example, the report states that TASER's warnings "place[] a great deal of emphasis on litigation as a factor. This emphasis on litigation, in conjunction with downplaying the hazard and its consequences, will result in the user not regarding the instruction to aim lower as an important, relevant safety consideration." (Docket No. 89-1 at 10.) Additionally, he opines that the manner in which TASER "viewed and communicated the hazard and consequences of tasing in the chest; namely, that the hazard and its potential consequence of cardiac arrest is virtually nonexistent (the risk could be "rounded to zero") . . . is the equivalent of telling the user "Don't worry about it." Id.

Dr. Laughery's limited review of the warning materials presents a problem. As the court noted in its opinion denying the defendant's motion for summary judgment, the adequacy of TASER's warnings must be viewed in their totality.[2] As such, Dr. Laughery cannot testify as to the overall effectiveness of the warnings. He is, however, qualified to speak to the materials he has actually reviewed and what effect they might have had on a user, but this does not extend to their impact on someone who was also exposed to the later warnings. It is the court's belief that the interim communications make up a piece of the relevant training materials, but only a piece, and Dr. Laughery's testimony must be limited accordingly. The court will therefore deny the defendant's motion to exclude Dr. Laughery entirely, but will pare his testimony to an analysis of only those materials which he has reviewed. Stated differently, Dr. Laughery will not be allowed to testify as

---

[2] TASER at least partially acknowledges this in its reply memorandum asking the court to exclude Dr. Laughery when it says that "there is one issue on which the parties agree: TASER's relevant warnings must be consider[ed] as a whole and in their totality." (Docket No. 93, at 1) (internal quotation marks omitted) (emphasis and alteration in original). Of course, TASER asserts that the interim communications are not part of the relevant warnings.

to what remedial effect the later training materials and warnings may or may not have had on a user who had previously been exposed to the interim communications.[3]

## III.    TASER's Motion to Exclude Dr. Geoffrey Alpert

TASER also filed a motion to exclude Dr. Geoffrey Alpert, the plaintiff's use of force expert. Dr. Alpert has a Ph.D. in Sociology and is a Professor of Criminology and Criminal Justice at the University of South Carolina. Dr. Alpert has extensive experience on the subject of police tactics, and has been admitted as an expert witness in numerous court cases.

Although Dr. Alpert would be well qualified to opine on the manner in which the officers on the scene responded to the decedent's actions, in light of the court's earlier ruling dismissing Deputy Wright from the suit, such testimony is no longer relevant. The court believes that nothing in Dr. Alpert's proposed testimony would aid the jury's understanding of the issues material to the plaintiff's products liability claims against TASER. The only possible topic on which Dr. Alpert could testify would be in response to a contributory negligence defense raised by TASER. Even there, however, there is nothing in Dr. Alpert's report to indicate that he could "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Dr. Alpert's expert report includes five opinions, each of which discusses the officers' actions and whether they

---

[3] TASER also argues that Dr. Laughery lacks the necessary expertise in law enforcement issues to render expert opinions regarding ECD warnings used by specially trained police officers. See Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 203 (4th Cir. 2000) ("A critical distinction between Rule 701 and Rule 702 testimony is that an expert witness must possess some specialized knowledge or skill or education that is not in the possession of the jurors.") (internal quotation marks omitted). However, Russell is correct in responding that a warnings expert need not possess a background in the particular field in which a product is used in order to testify about the effectiveness of that product's warnings. For example, In Belk, Inc. v. Meyer Corp., U.S., the United States Court of Appeals for the Fourth Circuit affirmed a district court's decision denying the defendant's motion to exclude an expert witness on the grounds that he had only particularized experience in the field of trade dress. The defendant argued that the expert had only "generalized marketing expertise," unrelated to the specifics of trade dress issues. Id. at 162. The Fourth Circuit rejected the motion to exclude, holding that the defendant was "read[ing] the [specialized knowledge] requirement far too narrowly." Id.; see also Wolfe v. McNeil-PPC, Inc., No. 07-348, 2011 WL 1673805, at *10 (E.D. Pa. May 4, 2011) (admitting expert who had experience studying human interaction with packaging but not medical training to testify on whether warnings on ibuprofen packaging were adequate to communicate the nature of the product's health risks); In re Welding Fume Products Liability Litigation, No. 1:03-cv-17000, 2010 WL 7699456, at *27 (N.D. Ohio June 4, 2010) (admitting human factors expert to testify about product packaging in case relating to whether manganese in welding fumes causes neurological damage). As a result, Dr. Laughery's law enforcement experience does not bar his testimony as an expert witness for the plaintiff.

behaved reasonably in light of the circumstances of the incident.  However, the reasonableness of the officers' behavior is a separate inquiry from whether Russell was negligent in contributing to his own death.  Dr. Alpert's interpretation of the video evidence—much of which, it should be said, includes statements and opinions that he is likely not qualified to make, lacking as he does any expertise in audio/video matters or human communications—will not meaningfully aid the jurors' own analysis of Russell's actions as captured in the videos.  The jurors can view the videos themselves and determine whether Russell's behavior made it foreseeable to an objectively reasonable person that he would be tased directly in the chest.  The very reason why a use of force expert might be helpful to a jury in certain circumstances—to assist their understanding of law enforcement techniques and procedures with which they are unfamiliar—also highlights why that same expert is not appropriate to talk about what an objectively reasonable person in Russell's position would have expected to result from his actions.  The jurors do not need an expert to tell them what an ordinary person would think.  See Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993) (expert testimony should not be permitted "when the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense").

Moreover, Dr. Alpert's area of expertise, and the opinions in his report, all deal with the reasonableness of the officers' actions.  As previously stated, this is quite a different question from whether a plaintiff in a products liability suit was negligent in contributing to his own death.  As such, the court will grant the defendant's motion to exclude the testimony of Dr. Alpert.

IV.   **Motion on Duplicative Testimony**

The plaintiff has moved the court "to bar duplicative expert witness testimony."  The motion is a general objection to the number of TASER's proposed expert witnesses on a variety of subjects, and does not request the exclusion of any particular witnesses.  TASER has responded that the

6

plaintiff's motion is both premature and that it does not demonstrate that TASER is in fact offering impermissibly duplicative testimony.

TASER's objections on the matter are well-taken. Simply because TASER has offered the reports of a number of expert witnesses does not mean all of them will be called to testify at trial. It also does not mean that any of the witnesses will testify to the same matters. As trial approaches, the court, as well as the parties, will be in a better position to determine what, if any, testimony runs the risk of being duplicative. See Spartan, L.L.C. v. Kansas City Title, Inc., No. 07-0049, 2008 WL 5500912, *3 (W.D. Mo. July 29, 2008) ("If the testimony offered by Ms. Cochran and Ms. Rubin becomes redundant or duplicative at trial, the Court will restrict such testimony accordingly, but the Court will not strike Ms. Cochran as an expert witness at this time."); see also Nalder v. West Park Hosp., 254 F.2d 1168, 1173 (10th Cir. 2001) (courts should not exclude expert witnesses "on the basis of mere numbers"). Accordingly, the court will deny the plaintiff's motion and will address the issue of duplicative or excessive testimony at a later date.[4]

## V.    Conclusion

For the reasons stated, the court will enter an order (1) granting in part and denying in part the defendant's motion to exclude Dr. Laughery, (2) granting the defendant's motion to exclude Dr. Alpert, (3) denying the plaintiff's motion on duplicative testimony, and (4) denying as moot the plaintiff's motion to exclude Dr. Kroll. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

**ENTER:** This _14th_ day of February, 2013.

_____
Chief United States District Judge

---

[4] The plaintiff also filed a motion to exclude the testimony of Dr. Mark W. Kroll. As the defendant has indicated it no longer intends to rely on Dr. Kroll's testimony, the court will deny the plaintiff's motion as moot.