UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| ANITA RUSSELL, Personal Representative for the Estate of Daniel Russell, | ) ) ) ) | |
| Plaintiff, | ) | Civil Action No. 3:11-cv-00075-GEC |
| v. | ) ) | |
| DENNEY WRIGHT, et al., | ) ) | |
| Defendants. | ) ) | |

**DEFENDANT TASER INTERNATIONAL, INC.'S
REPLY MEMORANDUM IN SUPPORT OF RENEWED
MOTION FOR SUMMARY JUDGMENT**

COMES NOW the defendant, TASER International, Inc. ("TASER"), by counsel, and files this Reply Memorandum in Support of Renewed Motion for Summary Judgment. For the reasons stated herein and in TASER's initial Memorandum in Support of Renewed Motion for Summary Judgment [Dkt. 104] ("Renewed MSJ"), no genuine issue of material fact remains and TASER is entitled to judgment as a matter of law.

**SUMMARY OF ARGUMENT**

In evaluating the sufficiency of Dr. Kenneth Laughery's limited expert opinions in light of Plaintiff's evidentiary burden in establishing a prime facie case, it is crucial to focus on the following undisputed facts:

1. Deputy Wright was first trained by the Appomattox County Sheriff's Office ("ACSO") on the TASER X26™ electronic control device ("ECD") on April 26, 2010 [Wright Dep. [Dkt. 60-7] at 47; Mem. Op. [Dkt. 95] at 26];

2. On the date of Deputy Wright's training, TASER's Version 16 training materials (released in December 2009) and September 30, 2009 product warnings were in effect <u>and</u> TASER's training protocol required ACSO to use them [Smith Dec. [Dkt. 60-11] at ¶¶ 22, 38-41, 44-47; Burton Dep. [Dkt. 60-31] at 71; Mem. Op. [Dkt. 95] at 26];

3. ACSO trainer Deputy Burton mistakenly used TASER's outdated and superseded Version 14 training materials (released in December 2007) and March 1, 2007 product warnings in Deputy Wright's 2010 training course [Burton Dep. [Dkt. 60-31] at 11, 14, 17-18, 71, 80, 92-93; Mem. Op. [Dkt. 95] at 26];

4. Because Deputy Burton used the wrong training materials, prior to the October 30, 2010 Russell incident, Deputy Wright had never read or seen TASER's September 30, 2009 product warnings changing the preferred target zone to "lower center mass (below chest)", or TASER's Version 16 end user PowerPoint presentation with the "blue man" graphic clearly depicting a below-chest preferred target zone [Wright Dec. [Dkt. 60-34] at ¶¶ 3, 7]; and

5. Deputy Wright testified he has no recollection of ever reading or seeing any of the communications from TASER surrounding the initial lowering of its preferred target zone, including, specifically, TASER's Training Bulletin 15.0 (either Version 1 or 2), TASER's one-page synopsis of Training Bulletin 15.0, or Rick Guilbault's ILEETA article [Wright Dec. [Dkt. 60-34] at ¶¶ 3-7; Wright Dep. [Dkt. 60-7] at 229].

Based on these undisputed facts, there are two fatal flaws in Plaintiff's Response to TASER's Renewed MSJ [Dkt. 110] ("Resp."). First, Plaintiff concedes that this Court has "appropriately prevented Dr. Laughery from testifying on warnings he has not reviewed," and

that "Dr. Laughery has not reviewed Version 17 of the training materials." (Resp. at 3). Although Plaintiff avoids discussion of Version 16 for obvious reasons, Dr. Laughery admitted in his deposition that he also did not review TASER's Version 16 training materials that ACSO should have used in Deputy Wright's ECD training. (Laughery Dep. [Dkt. 78-3] at 82, 94, admitting he merely "scanned" the Version 16 disk "very quickly," could not identify what was on it, and issued no opinions about it in his report [Dkt. 89-1]). Accordingly, Dr. Laughery cannot testify about either Version 16 or Version 17, and therefore cannot offer any expert opinions concerning the adequacy of TASER's applicable warnings, which this Court has held must be "viewed collectively" and "in their totality." (Mem. Op. [Dkt. 95] at 42; Mem. Op. [Dkt. 100] at 4). Because Dr. Laughery cannot provide the expert opinions expressly required by this Court and Virginia law (Resp. at 5, admitting "Virginia law requires in products cases that Plaintiff produce expert testimony in the absence of an industry standard."), TASER is entitled to summary judgment on Plaintiff's negligent failure-to-warn claim.

Second, Dr. Laughery's warnings opinions ALL relate to documents Deputy Wright never saw and thus could not have affected his ECD targeting of Russell. Plaintiff concedes that her warning theory "relies primarily on Training Bulletin 15," and that "Dr. Laughery's testimony relies primarily on interim communications that occurred at the outset of Taser changing the preferred target zone," namely "Bulletin 15, the Guilbault Memorandum, and Q&A from Vice President Guilbault" all issued in October 2009. (Resp. at 3, 7, 9). Because Plaintiff has offered no evidence that Deputy Wright ever saw or knew about any of the Bulletin 15 materials relied upon by Dr. Laughery, it is misleading for Plaintiff to state that "Dr. Laughery is able to testify on all the material *ever reviewed or received by Officer Wright prior to his administration of the Taser*," and "is allowed to testify on the materials Plaintiff alleges were

inadequate *and directly relied upon by the officer that administered the Taser.*" (Resp. at 2-3, emphasis added). There simply is no document relied upon by Dr. Laughery that was also relied upon by Deputy Wright. Not one. His limited opinions therefore cannot support warning causation as a matter of law. TASER's Renewed MSJ should therefore be granted.

## UNREVIEWED TRAINING VERSIONS 16 AND 17

As discussed in previous pleadings, TASER has a comprehensive warning and training system for its master instructors, instructors and users. The system consists of product warnings that are periodically updated by TASER. The system also consists of training programs tailored to instructors or users. These training programs also are periodically updated by TASER. When updated, new product warnings and training programs are disseminated to master instructors and instructors for use in training and retraining users. (*See generally* Initial MSJ Memo [Dkt. 60] at 7-10, 15-22; Mem. Op. [Dkt. 95] at 24-29).

While much of the discussion in this case about TASER's warning and training system has focused on product warnings and PowerPoint presentations, those comprise only a portion of TASER's warning and training system. In addition to PowerPoint presentations, TASER's training programs also include training drills and tests. For example, Version 16 of TASER's training program, which was included on a DVD disk disseminated in December 2009,[1] had a User Certification Checklist which spelled out the requirements for certification. (*See* **Exhibit A**). Version 16 required trainees to undergo a minimum of six hours of instruction, "including all drills and functional demonstrations." (*Id.*). Specifically, the user certification required trainees to discharge two cartridges within ten seconds from varying distances. (*Id.*). The Version 16 drill

---

[1] The full Version 16 DVD disk was submitted as Dkt. 93-2 and referenced excerpts are attached hereto.

requirement was reiterated in the Version 16 PowerPoint presentation. (*See* **Exhibit B,** V.16 Slide 175 and accompanying instructor notes).

The Version 16 drill procedures manual (also included on the disk) established the parameters for the drills. (*See* **Exhibit C**). The objectives of the drills are to "familiarize students with the basic operation of the TASER device controls and provide students with the practical experience to safely and effectively operate the TASER device. These are essential to create muscle memory!" (*Id.* at 5). Drill #3 requires the trainee to practice drawing the X26 ECD from a holster and aiming the "LASER sight at a *preferred target zone*." (*Id.* at 10, emphasis added). Drill #4 then requires the trainee to "aim LASER at a preferred target zone", announce "TASER, TASER", and deploy the probes. (*Id.* at 10). Drills #5 and #6 also require the trainee to discharge the X26 ECD at a "*preferred target zone*." (*Id.* at 11, 12, emphasis added). Actual life-size targets (depicted below) highlighted the lower center mass preferred target area for use during training drills and were included with the Version 16 training materials:



(*See* **Exhibit D**).

The preferred target zone was reiterated in the Version 16 PowerPoint presentation:



(*See* **Exhibit E**). However, it is the training drills that require officers to practice safe and effective ECD deployment. These Version 16 training materials and drills were never reviewed or considered by Dr. Laughery, and the Court has "pare[d] his testimony to an analysis of only those materials which he has reviewed." (Mem. Op. [Dkt. 100] at 4). These materials and drills also were never presented to Deputy Wright, even though TASER had disseminated them to the ACSO on December 7, 2009, over four months before Deputy Wright's training.

By contrast, the outdated Version 14 training drills incorrectly used by Deputy Burton to train Deputy Wright required the trainee to practice aiming and targeting "upper center of mass." (*See* **Exhibit F** at 8, 11, 12). The distinction between Version 14 and Version 16 in training is crucial, because live fire training is where the trainee gains his or her experience appropriately targeting the suspect. Even though Version 16 was released, including its lower center of mass preferred target zone, Deputy Wright was explicitly trained by Deputy Burton to target the upper center of mass. Dr. Laughery did not take into account the new training regimen required by Version 16 in formulating his opinions. He only "very quickly" scanned Version 16 and focused

his attention on Version 14 – the version incorrectly used by ACSO to train Deputy Wright. (Mem. Op. [Dkt. 100] at 3 & n.1.; Laughery Dep. [Dkt. 78-3] at 22-23, 25, 33, 82, 94).

On May 1, 2010, TASER again updated its product warnings and training program when it issued the Version 17 training DVD [Dkt. 93-3]. Version 17 was disseminated a few days after Deputy Wright's training but almost six months before the October 30, 2010 Russell incident. Like Version 16, Version 17 certification required the trainee to successfully discharge the ECD during drills and provided life-sized targets clearly marking a below chest preferred target zone. The Version 17 PowerPoint also included a "blue man" depiction of the preferred target zone, again emphasizing the lower center mass preferred target area, as well as additional cardiac slides. (Slide **Exhibit G**). Like Version 16, Dr. Laughery failed to take these updated training materials into account in formulating his opinions. It is uncontroverted that Dr. Laughery did not review any aspects of TASER's Version 17 training program, including the May 1, 2010 product warnings included with the disk, which were in effect on the date of the Russell incident. (Laughery Dep. [Dkt. 78-3] at 94).

The contents of the Version 16 and Version 17 disks were ignored by Dr. Laughery, even though TASER disseminated them to ACSO and its designated training officer on December 7, 2009 and May 1, 2010, respectively.

**ARGUMENT AND AUTHORITIES**

**I. DR. LAUGHERY FAILED TO CONSIDER ALL TASER COMMUNICATIONS, WARNINGS, AND TRAINING MATERIALS IN FORMULATING HIS OPINION, AND PLAINTIFF'S PRODUCT LIABILITY CLAIMS THEREFORE MUST FAIL.**

A negligent failure-to-warn claim focuses on whether the conduct of the manufacturer is unreasonable. *Bly v. Otis Elev. Co.*, 713 F.2d 1040, 1045-46 (4th Cir. 1983). Here, the Court has held that TASER had a post-sale duty to warn, so the reasonableness of its conduct must be

gauged based on its conduct after the sale of the X26 ECD to ACSO.[2] (Mem. Op. [Dkt. 95] at 31-37, 47). The Court also has held that the reasonableness of TASER's conduct cannot be evaluated based on a single set of warnings. (*Id.* at 38). Instead, "the proper scope of the reasonableness analysis should include the whole of TASER's communications to its product users." (*Id.* at 39; *see also id.* at 39-40 ("the reasonableness of the manufacturer's conduct should be measured by considering all of the steps taken in assuring that users have and understand the most complete warnings reasonably required by law."); *id.* at 42 ("the adequacy of TASER's warnings" must be "viewed collectively"); Mem. Op. [Dkt. 100] at 4 ("the adequacy of TASER's warnings must be viewed in their totality.")).

Plaintiff seemingly ignores these rulings by the Court, focusing her claim almost entirely on three or four documents disseminated in the fall of 2009, which Deputy Wright has testified he never saw. Plaintiff contends these few documents relied on by Dr. Laughery "represent the inadequate warnings that are the basis of Plaintiff's failure to warn claim." (Resp. at 3; *see also id.* at 7, conceding "Dr. Laughery's testimony relies primarily on interim communications that occurred at the outset of Taser changing the preferred target zone from the chest.").

Those "interim communications" relied upon by Dr. Laughery consist of: TASER's Bulletin 15.0, Rick Guilbault's ILEETA article regarding preferred target zones, and a Frequently Asked Questions e-mail. (Resp. at 3, 7-9). Interestingly, in her response to TASER's Initial MSJ, Plaintiff promised to "provide testimony that TASER's warnings were insufficient in their totality." (Dkt. 66 at 7). She has backed away entirely from that guarantee in her most recent pleading, doubtless because of the now apparent deficiencies in her expert's testimony.

---

[2] TASER acknowledges the Court's ruling as to the existence of a post-sale duty to warn for the purposes of this motion, but preserves its prior objection to the existence of any such duty under Virginia law for purposes of appeal.

Plaintiff now contends that "later additional warnings that [TASER] allege[s] Deputy Wright should have seen . . . do[] not form the basis of the alleged failure to warn." (Resp. at 4).

Under the Court's earlier rulings, reliance on such a scant segment of TASER's communications to its product users is insufficient to prove TASER acted unreasonably. As the Court noted, "[i]f TASER is to be found liable, it must be for negligence in instructing users on the nature of the actual risk of its product, *and then failing to correct that error by ensuring future warnings could be properly understood in light of the company's prior statements*." (Mem. Op. [Dkt. 95] at 47, emphasis added). "[I]t would be unfair to TASER to hold that it could never escape the shadow of a single set of communications . . . no matter how effective any future warnings might be." (Mem. Op. [Dkt. 95] at 39). The "interim communications" comprise "only a piece" of the relevant training materials. (Mem. Op. [Dkt. 100] at 4). Thus, the Court has prohibited Dr. Laughery from testifying as to the "overall effectiveness of [TASER's] warnings." (*Id*.). Without expert testimony regarding the "totality" of TASER's product warnings and training materials, Plaintiff cannot prove that TASER acted negligently. Simply put, Plaintiff cannot cherry pick a discrete segment of TASER's communications; she must present evidence that "the whole of TASER's communications to its product users" was unreasonable.

Dr. Laughery cannot provide the required expert testimony as to the unreasonableness of "the whole of TASER's communications." When asked about the contents of the disks, Laughery conceded "I wouldn't say that I carefully reviewed each one. I focused on 14 and 15." (Laughery Dep. [78-3] at 82). He also admitted that he did not know what TASER "shipped with Versions 14, 15, 16, and so forth . . . ." (*Id*. at 33). Indeed, he merely "scanned" the Version 16 disk "very quickly." (*Id*. at 82). When asked if he reviewed Version 16, he answered "Not

9

much." (*Id.* at 94). When asked specifically if he could identify what was on the Version 16 disk, he replied "No." (*Id.* at 82). Laughery conceded that he did not even bother to scan the Version 17 disk. (*Id.* at 94). Laughery also did not review the May 1, 2010 product warnings included with the Version 17 disk. Because of his failure to review essential communications from TASER to its product users, the Court held that Laughery "cannot testify as to the overall effectiveness of the warnings." (Mem. Op. [Dkt. 100] at 4).

Clearly Versions 16 and 17 of TASER's training programs, as well as TASER's May 1, 2010 product warnings, are relevant and constitute an important part of TASER's communications to its product end users. Indeed, Version 16 is crucial since it was the version Deputy Wright should have been training on but wasn't. Both training programs were released prior to the October 30, 2010 incident involving Plaintiff's decedent, and Version 16 was disseminated before Deputy Wright was trained on the X26 ECD on April 26, 2010. To prevail, Plaintiff must prove that the totality of TASER's communications, including, specifically Version 16, were inadequate. Plaintiff cannot produce such proof and, therefore, cannot succeed with her claims.

## II. THE FACT THAT ADEQUACY IS A JURY ISSUE DOES NOT SAVE PLAINTIFF FROM HAVING TO PRODUCE EVIDENCE TO CREATE THE JURY ISSUE.

Plaintiff puts considerable emphasis on the Court's conclusion that the adequacy of warnings creates a jury issue. (Resp. at 1, 2, 4, 6). Her reliance on this common refrain in Virginia products' liability jurisprudence is unavailing, however. First, the Court made that assessment before limiting Dr. Laughery's testimony. (*See* Mem. Op. [Dkt. 95] at 41 n.14, noting arguments related to motion to exclude Dr. Laughery were premature for consideration at summary judgment). Thus, even if Plaintiff correctly construes the Court's language as initially

entitling her to a jury trial, that conclusion is drawn into considerable doubt given the Court's subsequent ruling excluding Dr. Laughery's testimony regarding the overall effectiveness of TASER's warnings. (Mem. Op. [Dkt. 100] at 4).

Moreover, Plaintiff confuses the existence of a jury issue as to the adequacy of warnings with the production of evidence to support a prima facie case. There is no jury issue here because Plaintiff has failed to offer sufficient expert testimony that TASER acted unreasonably, given the whole of TASER's communications to product users. In the absence of expert testimony that TASER's communications, when viewed collectively, were inadequate, Plaintiff's evidence fails as a matter of law.

Plaintiff appears to advocate a burden shifting analysis which would allow her to create a jury issue by relying on three or four documents from the fall of 2009 (which Deputy Wright never saw), and then shift the burden to TASER to rebut any implications created by those documents. (Resp. at 4). Plaintiff cites no authority for her novel methodology for assessing the adequacy of warnings in Virginia. More importantly, Plaintiff's proposal fails in light of this Court's earlier rulings, for to hold otherwise would allow her to prove negligence based on "only a piece" of TASER's communications, evidence that the Court previously concluded was insufficient to assess the overall effectiveness of TASER's warnings. (Mem. Op. [Dkt. 100] at 4). Such an outcome would clearly run counter to the Court's requirement that TASER's warnings be considered in totality. In order for Plaintiff's burden shifting approach to work, she would have to be able to prove liability without taking in to consideration the actual materials contained in Version 16 in effect at the time of Deputy Wright's training. Such an outcome clearly is not supported by the Court's earlier rulings or Virginia law.

## III. PLAINTIFF CANNOT OFFER ANY EVIDENCE AS TO INADEQUACIES IN THE METHODS USED BY TASER TO DISSEMINATE WARNINGS AND TRAINING MATERIALS.

The Court noted that the analysis of TASER's communications required consideration of the substance of TASER's warnings and training materials, as well as TASER's methods of disseminating those materials. (Mem. Op. [Dkt. 95] at 31, 40). Plaintiff contends that she can produce evidence of inadequate dissemination through lay testimony and through Dr. Laughery. (Resp. at 9).

As to Dr. Laughery, he has not offered any opinion as to the inadequacy of TASER's methods of disseminating product warnings and training materials to its customers. Nor does his report reference any intention to offer any such opinions. Nothing in his report refers to defects or inadequacies in TASER's post-sale dissemination process. Accordingly, Dr. Laughery cannot testify about inadequacies in TASER's methods of disseminating product warnings and training materials to law enforcement agencies and trainers. *See* Fed. R. Civ. P. 26(a)(2). Moreover, Plaintiff has no other evidence as to the inadequacy of TASER's methods of disseminating new product safety information to its customers. Lay testimony is clearly inadequate to establish a breach of any applicable standard of care in TASER's warning dissemination methods.

As held by the Court, methods of disseminating product warnings and training materials must be assessed when considering whether "all of the steps" taken by TASER were reasonable. (*See* Mem. Op. [Dkt. 95] at 39-40). Because Plaintiff has no expert opinion as to alleged inadequacies in TASER's dissemination of its product warnings and training materials, she cannot prove her case.

## IV. PLAINTIFF'S CASE IMPROPERLY BOILS DOWN TO DOCUMENTS THAT WERE NEVER SEEN OR READ BY DEPUTY WRIGHT AND, AS SUCH, TASER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

In its first opinion, the Court held that "the proper scope of the reasonableness analysis should include the whole of TASER's communications to its *product users*." (Mem. Op. [Dkt. 95] at 39, emphasis added). Plaintiff seemingly concurs. In her Response, she notes that "Plaintiff's warning expert is allowed to testify on the materials Plaintiff alleges were inadequate and *directly relied upon by the officer that administered the Taser*." (Resp. at 2, emphasis added). She also states that "Dr. Laughery is able to testify on all the material ever reviewed or received by Officer Wright *prior to his administration of the Taser*." (*Id*. at 3, (emphasis added). Finally, Plaintiff claims that she "will show that the warnings provided to Deputy Wright were inadequate and never retracted by Taser." (*Id*. at 4).

What Deputy Wright saw prior to the Russell incident was the outdated and superseded Version 14 training materials (released December 2007) and March 1, 2007 product warnings. Those materials, incorrectly used by Deputy Burton to train Deputy Wright on April 26, 2010, specifically instructed Deputy Wright to target the upper center of mass. But these are not the materials upon which Plaintiff or Dr. Laughery base their failure-to-warn analysis. They concede it was ACSO's negligence, not TASER's, that resulted in Deputy Wright being trained on the wrong materials. They also tacitly concede the adequacy of TASER's September 30, 2009 warnings lowering the preferred target zone below the chest by trying to discredit the targeting change with TASER's subsequent communications. But since Deputy Wright never actually saw or read these communications, TASER is entitled to judgment as a matter of law.

**CONCLUSION**

Despite the Court's prior rulings and Plaintiff's admissions in her Response, Plaintiff attempts to seek a safe harbor to avoid the consequences of her warning expert's failure to read, or even review, all of TASER's relevant product warnings and training materials. Plaintiff's assertion that her expert's reliance on three or four discrete documents – documents Deputy Wright never saw prior to the Russell incident – is sufficient to get her to the jury simply cannot be squared with this Court's ruling that TASER's warnings must be viewed in totality. Expert testimony is required and Plaintiff does not have it.

For these reasons, it is respectfully submitted that TASER is entitled to judgment as a matter of law on Plaintiff's negligent failure-to-warn claims contained in Counts VI and IX of her Second Amended Complaint and her punitive damages claim in Count VII of her Second Amended Complaint.

Respectfully submitted,

/s/        Jeremy E. Carroll
Jeremy E. Carroll (VSB # 41331)
Glenn, Feldmann, Darby & Goodlatte
37 Campbell Avenue, S.W.
P. O. Box 2887
Roanoke, Virginia 24001-2887
Telephone: (540) 224-8036
Facsimile: (540) 224-8050
Email: jcarroll@gfdg.com

Isaiah Fields, Esq. (AZ# 024640)
TASER International, Inc.
17800 N. 85th Street
Scottsdale AZ 85255
Telephone: 480.502.6280
Facsimile: (480) 905.2027
Email: Isaiah@TASER.com

Counsel for TASER International, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2013 I electronically filed the foregoing Reply Memorandum in Support of Renewed Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

>Peter Andrew Miller, Esq.
>Jeffrey Alan Travers, Esq.
>Timothy Andrew Litzenburg, Esq.
>The Miller Law Firm, LLC
>The Sherman Building
>108 Railroad Avenue
>Orange, Virginia 22960
>pmiller@millerfirmllc.com
>jtravers@millerfimllc.com
>tlitzenburg@millerfirmllc.com
>
>/s/      Jeremy E. Carroll
>Jeremy E. Carroll